808 So.2d 803 (2002)
Donald Joseph SCEROLER, Jr. and Pasha McDonald Sceroler
v.
Vardie L. RANCHER, Jr. and Sheila Rancher.
Larry Benard McDonald and Pasha McDonald Sceroler
v.
Vardie L. Rancher, Jr. and Sheila Rancher.
No. 1999 CA 2859, 1999 CA 2860.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*804 Carey T. Jones, Denham Springs, Counsel for Plaintiffs/Appellants Donald Joseph Sceroler, Jr., Pasha McDonald Sceroler and Larry Benard McDonald.
Robert H. Harrison, Jr., Denham Springs, Counsel for Defendants/Appellees Vardie L. Rancher, Jr. and Sheila Rancher.
Before: CARTER, C.J., PARRO, and *805 CLAIBORNE,[1] JJ.
CLAIBORNE, Judge.
This case involves a dispute about the plaintiffs' right to access a public road from their enclosed estates south of Denham Springs, Louisiana, and the validity of an alleged compromise agreement. The trial court articulated very detailed and well-written reasons for judgment in holding that plaintiffs were not entitled to a predial servitude under La. Civ.Code art. 689 but were instead entitled to one in the form of a gratuitous right of passage over the property of their donor according to La. Civ.Code art. 694. The trial court further held that the parties did not have an enforceable compromise agreement to settle their differences. It is from this judgment that plaintiffs appeal. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
For many years, Larry W. and Nelda Rebecca McDonald (the McDonalds) owned an irregular-shaped tract of land in Livingston Parish, south of Denham Springs, Louisiana. The western boundary of the property was located adjacent to property owned by the defendants, Sheila and Vardie L. Rancher, Jr. (the Ranchers). The eastern boundary of the McDonald property was located along Henderson Road. Henderson Road always served as the public road access for the McDonald property because there was no other road adjacent to the property boundaries.
In 1988, the Ranchers decided to reserve ten acres of their property for their private residence and subdivide into lots and sell the remainder of their property located adjacent to the McDonald property. The Ranchers requested that the adjacent property owners, including the McDonalds, contribute towards the cost of building a road (Rancher Drive) along the common boundary line to serve as access for the subdivision to a nearby public highway, Harris Road. None of the adjacent landowners joined in the building of Rancher Drive, so the Ranchers proceeded to build the road approximately one foot inside the common boundary line thereby denying the adjacent property owners access to Rancher Drive. The Ranchers then dedicated Rancher Drive to Livingston Parish for use as a public road into the Ranchers' subdivision. As a condition of acceptance of the road into the parish system, the Ranchers were required, at considerable expense, to build the road so as to conform with parish road standards. The Ranchers sold eight residential lots with certain property restrictions; however, the Ranchers never sold the one foot "buffer zone" strip of land between Rancher Drive and the adjacent property owners.
On April 18, 1997, the McDonalds donated a portion of their property (approximately 2.93 acres) to their daughter and her husband, Donald Joseph Sceroler, Jr. and Pasha McDonald Sceroler (the Scerolers), to give them a place to build a family home near the McDonalds. On May 12, 1997, the McDonalds donated another portion of their property (approximately 10.24 acres) to their son, Larry Benard McDonald (Ben McDonald). The western boundaries of both tracts of donated land are adjacent to the Ranchers' narrow strip of land, approximately one foot away from Rancher Drive. Only the Sceroler tract adjoins (on the eastern boundary) the McDonalds' remaining property which has access *806 to Henderson Road. Neither tract of donated land borders any public road. Ben McDonald's tract is separated by the Sceroler tract from the McDonald's remaining land with access to Henderson Road. Both tracts of donated property are vacant, unimproved pieces of pasture land with no bayous, creeks, woods, marshes, railroads or any other obstacles on the land. There are no roads, paths or trails on the donated tracts of land. At no time did the McDonalds access the property donated to their children from any location other than the area adjacent to Henderson Road. After the donations were made, both the Scerolers' land and Ben McDonald's land had no direct access to a public road.
Shortly after the donations in 1997, Ben McDonald and the Scerolers attempted to negotiate the sale of the one foot "buffer zone" strip of land owned by the Ranchers in order to gain access to Rancher Drive. The Ranchers were not willing to sell the strip of land without the same subdivision property restrictions that were required on the lots they had previously sold also encumbering all of the Scerolers' and Ben McDonald's property. The negotiations were unsuccessful, and the Scerolers filed suit against the Ranchers alleging that their property was enclosed and demanding access to the nearest public road, Rancher Drive.[2]
Meanwhile, Ben McDonald continued to negotiate with the Ranchers in an attempt to purchase the one foot "buffer zone" strip of land. The Ranchers indicated their willingness to sell the strip of land provided the Scerolers and Ben McDonald were willing to subject the strip of land and their respective tracts of land to the same restrictions imposed on the lots previously sold by the Ranchers.
Communications by letter and telephone conversations were ongoing between Ben McDonald's and the Scerolers' (plaintiffs') attorney and the Ranchers' attorney, concerning a possible compromise of the litigation. Plaintiffs' attorney wrote to the Ranchers' attorney on April 7, 1998, suggesting that "Ben and/or Pasha buy the strip of property bordering their land" and "by counter letter" assure the Ranchers that the property would not be used for any objectionable purpose. In a letter dated April 28, 1998, the Ranchers' attorney indicated that the Ranchers were willing to sell the "property in question" for $15,000 along with some proposed property restrictions to be "placed on the property conveyed." On May 11, 1998, in a letter to the Ranchers' attorney, plaintiffs' attorney accepted "the offer set out" in the April 28, 1998 letter and then indicated that he would have the proposed property description and "necessary conveyances" prepared. Then, by letter on June 17, 1998, plaintiffs' attorney wrote to the Ranchers' attorney enclosing "a draft of the Cash Sale between Ben McDonald and Vardie and Sheila Rancher." The letter stated: "[a]s I understand it, Ben and the Ranchers have agreed to these terms and are ready to sign the deed." The last paragraph of the letter states: "[i]f there are any terms that need to be changed, please let me know so that I can make the necessary changes. Otherwise, I look forward to hearing from you soon." After seeing the draft of the sale documents, the Ranchers notified their attorney that they would not sign the documents because the property restrictions were not encumbering all of the property that the Ranchers believed were a part of the agreement. On April 27, 1999, Ben McDonald and *807 Pasha McDonald Sceroler filed suit for specific performance of the settlement agreement between them and the Ranchers.[3] The two lawsuits were consolidated for trial which took place on June 18, 1999.
The trial court rendered judgment in favor of the Ranchers, dismissing plaintiffs' demands for access to Rancher Drive and for the sale of the one foot strip of property according to the alleged agreement. Plaintiffs appealed, arguing that the trial court erred in finding a gratuitous right of passage over their donor parents' property to Henderson Road instead of granting them access to the nearest public road, Rancher Drive. Plaintiffs also contend the trial court committed manifest error in finding an invalid compromise agreement.

PREDIAL SERVITUDE OF RIGHT OF PASSAGE
The question of what kind of passage the plaintiffs are entitled to is a question of law requiring de novo review. Appellate review of questions of law consists of a simple review of the correctness of the trial court's decision as a matter of law. See Deville v. South Central Industries, Inc., 99-1377, p. 3 (La.App. 1st Cir.6/23/00), 764 So.2d 335, 337, writ denied, 2000-2619 (La.11/17/00), 774 So.2d 976.
The Louisiana Civil Code, Book II, title IV, chapter 3, section 3, governs a person's right to a predial servitude of right of passage.[4] When an estate has no access to a public road, the owner of the estate may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion. La. Civ.Code art. 689. The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands. La. Civ.Code art. 692. If an estate becomes enclosed as a result of a voluntary act or omission of its owner, the neighbors are not bound to furnish a passage to him or his successors. La. Civ.Code art. 693. When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude of passage. La. Civ.Code art. 694. The intention of the Civil Code articles allowing for the grant of a right of passage was to allow those people whose land is enclosed through no fault of their own to obtain a servitude of passage. Petrovich v. Trabeau, 98-2897, p. 5 (La.App. 4th Cir.3/07/01), 780 So.2d 1258, 1260, writ denied, XXXX-XXXX (La.6/15/01), 793 So.2d 1251.
The facts surrounding the right of passage in this case are undisputed. The McDonalds donated property to plaintiffs without expressly giving plaintiffs a servitude of passage to allow access to Henderson Road. It is clear that both of the donated tracts of land are without access to a public road, except through the McDonalds' property. The nearest public road to both donated tracts of land is Rancher Drive, which can only be accessed *808 by both tracts of land over the Ranchers' one foot strip of property. The McDonalds created this dilemma when they donated the enclosed tracts to the plaintiffs without leaving access to a public road. Prior to the donations, the land was not enclosedthe access to a public road was to Henderson Road. Plaintiffs did not create the enclosure, they merely acquired the enclosed property. Thus, if the plaintiffs are owners of a true enclave without access to a public road, they are not prohibited from seeking a right of passage by Article 693. See Griffith v. Cathey, 99-923, p. 10 (La.App. 3d Cir.2/2/00), 762 So.2d 29, 36, writ denied, XXXX-XXXX (La.10/6/00), 771 So.2d 85.
Article 694 is mandatorily applied when land becomes enclosed as a result of a voluntary alienation such as a sale, exchange, donation, subdivision or any other transaction that involves transfer of ownership. See A. N. Yiannopoulos, Predial Servitudes § 103, at 297-298, 4 Louisiana Civil Law Treatise (2d ed. 1997). Yiannopoulos observes, "[i]n all cases, the right to demand a gratuitous passage is accorded to one who acquires an enclosed estate as a result of a voluntary alienation ... of property." Yiannopoulos, Predial Servitudes § 103, at 297-298.
Although plaintiffs would clearly prefer to access the much closer public road (Rancher Drive) through the Ranchers' property, Article 689 only applies if the owner of the enclosed estate "has no access to a public road." If the owner of the enclosed estate is entitled to a gratuitous servitude of passage over "the land on which passage was previously exercised, even if it is not the shortest route to the public road," under Article 694, then technically Article 689 does not apply. The "access to a public road" is available over the land on which the passage was previously exercised. Thus, where a gratuitous passage is available under Article 694, an enclosed landowner is not entitled to an Article 689 servitude across a neighbor's land. See Langevin v. Howard, 363 So.2d 1209, 1215 (La.App. 2d Cir.1978), writ denied, 366 So.2d 560 (La.1979). Furthermore, the obligation of the McDonalds to furnish a gratuitous passage to Henderson Road arises as a result of a legal servitude in favor of the land on which the passage was previously exercised. Pursuant to the April 18, 1997 donation, the Scerolers became the owners of a portion of such land. Thus, the Scerolers, as owners of property burdened with a legal servitude of passage, are also obligated to grant Ben McDonald a gratuitous passage over their property to the McDonald's tract in order to access Henderson Road. See Patin v. Richard, 291 So.2d 879, 883-884 (La.App. 3d Cir. 1974). See also Brown v. Terry, 103 So.2d 541, 547-548 (La.App. 1st Cir.1958).
The trial court correctly concluded that unless the plaintiffs could show an exception to the general rule that they must avail themselves of the gratuitous right of passage over the McDonalds' property to Henderson Road, they may not compel their neighbors (the Ranchers) to provide them with access to the closer Rancher Drive, thereby burdening the Ranchers' property. The trial court noted in its reasons for judgment that Mr. McDonald had traveled his prior estate from "boundary to boundary" by tractor and all of it had access to Henderson Road. There was no testimony about any other road or any impediment to passage anywhere on the McDonald land, including that donated to the plaintiffs. We cannot say that the plaintiffs' property was without access to Henderson Road when that was the only way of accessing the property from a public road before the land was subdivided and donated to plaintiffs. The mere fact that a road or pathway did not actually exist on the ground does not change the *809 fact that the property was accessed by way of Henderson Road in the past. Article 694 dictates that where a passage has been exercised in the past, the owner of the land upon which the right of passage was previously exercised is bound to furnish a gratuitous passage.
Likewise, we do not find the facts of this case to fit the jurisprudential exception outlined in Stuckey v. Collins, 464 So.2d 346, 348 (La.App. 2d Cir.1985), that where passage across the vendor's (or donor's) land is impossible or highly impractical, an enclosed owner, even though legally entitled to an Article 694 servitude across his vendor's (or donor's) property, may seek an Article 689 servitude across a neighbor's land. The trial court noted in its reasons for judgment,
[t]here is no showing that a passage across the Larry McDonald land is impractical if not impossible. The Sceroler land is 300-400 feet from Henderson Road and the Ben McDonald land is approximately 1,000 feet. The exact distance is not known. There is no testimony about bayous, railroads, creeks, woods, canals or marshes which would render passage difficult or impossible.
The facts do not support the Stuckey exception.
We agree. Mr. McDonald testified that there were no obstacles on the vacant, unimproved tracts of land. Nothing blocked his passage onto the property in the past.
We conclude, as did the trial court, that plaintiffs must avail themselves of the gratuitous right of passage under Article 694 to Henderson Road through their donor's property. Thus, plaintiffs' first three assignments of error are without merit.

COMPROMISE AGREEMENT
The trial court's determination that the parties had not reached an enforceable compromise agreement will not be disturbed absent a finding of manifest error. See Shell Oil Co. v. Jackson, 94-1267, p. 6 (La.App. 1st Cir.5/5/95), 655 So.2d 482, 484. A compromise is valid only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Shell Oil Co., 94-1267 at 8, 655 So.2d at 486. The trial court, in its reasons for judgment, determined that there was an error between the parties as to the principal cause of the proposed compromise agreement. The trial court found that the Ranchers' willingness to resolve the litigation was dependent on the plaintiffs' agreement to have the property restrictions apply to all of plaintiffs' property, not just the "buffer zone" to be purchased by Ben McDonald. The Ranchers refused to sign the final act of sale documents when they discovered that the property restrictions did not encumber all of the plaintiffs' land. We do not find any error in the trial court's determination. Mr. Rancher testified that the negotiations between him and Ben McDonald which led to the correspondence between counsel always involved the restrictions applying to Ben McDonald's and the Scerolers' tracts of land as well as the "buffer zone" strip in the contemplated sale to Ben McDonald.
Furthermore, we find that the correspondence between the parties' attorneys does not clearly outline an agreement that was mutually agreed upon and does not meet the writing requirement of La. Civ.Code art. 3071.[5] When a dispute *810 arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Ortega v. State, Dept. of Transp. and Development, 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363-1364.
The evidence shows that the parties merely had an understanding contemplating their mutual desire to end the litigation pending completion of sale documents. That understanding was not clearly outlined in the correspondence between attorneys. Even the letter which plaintiffs rely on as evidence of an enforceable compromise has language acknowledging that the terms were subject to change. The last paragraph of the letter states, "[i]f there are any terms that need to be changed, please let me know so that I can make the necessary changes." Obviously, the parties never intended to be bound by the exchange of letters between their attorneys. The compromise was not complete until the parties signed the formal act of sale. None of the correspondence between counsel contained the property description of the proposed sale. The Ranchers were not aware that the restrictions did not encumber all of the plaintiffs' property until they saw the proposed act of sale with the proposed property description and restrictions. The Ranchers refused to sign because the act of sale did not accurately reflect what they thought they had agreed to. A compromise never came into existence.
The trial court in part discussed the compromise, as follows:
There are two reasons that influence the court in finding fundamental and substantial error in the purported compromise.
First, Mr. Rancher testified that negotiations which he had with Ben McDonald which led to communication between counsel always involved having the restrictions apply to the parcels donated to the Scerolers and to Ben McDonald as well as the 0.546 acre subject of the contemplated sale to Ben McDonald.
Mr. Rancher further testified that all discussions included restrictions on the plaintiff's property as well as the sale property. Accepting that, plaintiffs ought not to be able to rely on the letter notation error to the contrary.
This testimony is uncontradicted.
Secondly, it does not seem to be within reason that the agreed upon restrictions should apply only to the 0.546 acre that which stretched from one foot in width to 107.80 feet with a pond occupying most of the 107.80 feet width....
Some of the restrictions would contemplate or prohibit conditions which are inherently impossible or totally unreasonable if applied only to the elongated pond occupied 0.546 acre....
Applying the restrictions to plaintiffs' parcels is deemed to be a principal cause of Rancher's willingness to resolve the litigation. In the absence thereof, Mr. Rancher notified counsel and refused to sign the sale.
This court will decline to enforce an aborted compromise sale for reasons expressed.
*811 The correspondence between the attorneys simply does not demonstrate that the parties reached a meeting of the minds. The trial court correctly determined that no compromise agreement was reached. The parties each envisioned something different with regard to the final property description and property restrictions that would be contained in the sale documents. Thus, plaintiffs' final two assignments of error are without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to plaintiffs, Donald Joseph Sceroler, Jr., Pasha McDonald Sceroler and Larry Benard McDonald.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] This lawsuit was filed on July 21, 1997, in suit number 79,893, entitled "Donald Joseph Sceroler, Jr. and Pasha McDonald Sceroler Versus Vardie L. Rancher, Jr. and Sheila Rancher."
[3] This lawsuit was entitled "Larry Benard McDonald and Pasha McDonald Sceroler Versus Vardie L. Rancher, Jr. and Sheila Rancher" in suit number 85,434.
[4] All referenced Civil Code Articles were revised and renumerated in 1977.
[5] La. Civ.Code art. 3071 provides:

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner in which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.