893 So.2d 887 (2004)
H.R. 10 PROFIT SHARING PLAN Account No. 2656-3314, Individually, and on Behalf of All Other Common Stock Shareholders of Ethyl Corporation
v.
James MAYEUX, Barbara Richard Mayeux, and Ethyl Corporation.
No. 2003 CA 0691.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
Opinion Granting Rehearing March 2, 2005.
*888 Patrick W. Pendley, Plaquemine, Counsel for Plaintiffs/Appellants H.R. Profit Sharing Plan Account No. 2656-3314 and Robert H. Wesson.
William C. Shockey, Baton Rouge, Charles L. Stern, Jr., New Orleans, Counsel for Defendants/Appellees James Mayeux and Barbara Richard Mayeux.
David Bienvenu, Jr., John R. Tharp, Baton Rouge, Barry Marionneaux, Plaquemine, Counsel for Defendant/Appellee Ethyl Corporation.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this shareholder derivative action, plaintiffs, Robert H. Wesson and H.R. 10 Profit Sharing Plan Account No. 2656-3314, individually and on behalf of all other common stock shareholders of Ethyl Corporation, appeal judgments of the trial court sustaining James and Barbara Mayeux's peremptory exception raising the objection of no cause of action and granting Ethyl Corporation's motion to dismiss the action.[1] For the reasons that follow, we affirm the trial court's judgment sustaining the exception raising the objection of no cause of action and dismiss the appeal to the extent it seeks review of the trial court's granting of the motion to dismiss.

FACTS AND PROCEDURAL HISTORY
Plaintiffs are shareholders of Ethyl Corporation (Ethyl). On March 6, 1998, Ethyl *889 sold contiguous parcels of land in Iberville Parish, Louisiana, totaling approximately 2,913 acres, to James and Barbara Mayeux (Mayeuxs) for 5.5 million dollars. The act of sale was recorded in the conveyance records of Iberville Parish on March 10, 1998. An act of correction was subsequently performed on April 14, 1998, to amend and correct the legal description of property, which had omitted certain strips of land totaling approximately 11 acres.
On March 8, 1999, plaintiffs filed a shareholder derivative action in the Eighteenth Judicial District Court in and for the Parish of Iberville,[2] naming the Mayeuxs and Ethyl as defendants[3] and alleging that the sale to the Mayeuxs was lesionary under La. C.C. arts. 2589-2600. The Mayeuxs and Ethyl thereafter filed declinatory exceptions raising the objection of improper venue, asserting that the proper venue for plaintiffs' action was East Baton Rouge Parish. Following a hearing on these exceptions, a judgment was signed on October 8, 1999, sustaining the exceptions raising the objection of improper venue and transferring the matter to the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge.
Thereafter, the Mayeuxs answered plaintiffs' petition and filed a peremptory exception raising the objection of no cause of action, asserting that the plaintiffs' action had perempted because it was not filed in a proper venue or served within one year of the sale. Following a hearing on the exception, the trial court signed a judgment on May 25, 2000, sustaining the Mayeuxs' exception and dismissing the plaintiffs' action with prejudice. Plaintiffs thereafter filed a suspensive appeal with this court on September 13, 2000, seeking review of both the October 8, 1999 and May 25, 2000 judgments. On June 4, 2001, this court dismissed plaintiffs' appeal, finding that the October 8, 1999 judgment was not timely appealed and that the May 25, 2000 partial judgment was not a final judgment. Wesson v. Mayeaux, 2000 CA 2636 (La.App. 1st Cir.6/4/01) (unpublished opinion). Plaintiffs thereafter filed a motion and order in the trial court seeking certification of the May 25, 2000 judgment as final. Following the trial court's subsequent certification, plaintiffs filed a motion to supplement the record on appeal and filed an application for rehearing. This court denied plaintiffs' request for rehearing and plaintiffs thereafter filed an application for a writ of certiorari in the supreme court, which was also denied.
On May 30, 2002, Ethyl filed a motion to dismiss plaintiffs' action in the trial court, asserting that there were no longer any viable defendants against whom Ethyl and the shareholder plaintiffs could obtain relief. Following a hearing on the motion, the trial court signed a judgment on August 20, 2002, dismissing plaintiffs' claims without prejudice. Plaintiffs thereafter filed a motion for appeal on October 15, 2002, seeking review of the October 8, 1999, May 25, 2000, and August 20, 2002 judgments. This court, ex proprio motu, issued a rule to show cause why the appeal should not be dismissed. In particular, this court was concerned with the following issues: the October 8, 1999 judgment previously addressed by this court; the timeliness of appeal from the May 25, 2000 *890 judgment; and the August 20, 2002 judgment not being signed by the trial judge.
On July 1, 2003, this court issued its decision on the rule to show cause as follows: dismissed the appeal to the extent it sought review of the October 8, 1999 judgment because said judgment was previously addressed by this court in Wesson v. Mayeux, 2000 CA 2636; recalled the rule to show cause and maintained the appeal to the extent that it sought review of the May 25, 2000 judgment, because the appeal delays had not begun to run; and annulled the August 20, 2002[4] judgment, remanded to the trial court for the limited purpose of having the trial judge who heard and decided the matter sign a proper judgment, and directed the trial court to supplement the appellate record with certified copies of the judgment. In accordance with this court's ruling, the trial judge signed a proper judgment on July 14, 2003, and this court subsequently maintained the appeal to the extent it seeks review of the July 14, 2003 judgment. Therefore, only the May 25, 2002 and July 14, 2003 judgments are before this court for review.

DISCUSSION

No Cause of Action
Plaintiffs first assert that the trial court erred in its May 25, 2000 judgment by improperly sustaining the Mayeuxs' exception raising the objection of no cause of action and dismissing their suit as to the Mayeuxs. As stated previously, plaintiffs filed a shareholder's derivative action for lesion beyond moiety in accordance with La. C.C. art. 2589.[5] However, La. C.C. art. 2595 provides that an action for lesion must be brought within a peremptive period of one year from the time of the sale. In the instant case, the sale of the Iberville Parish property took place on March 6, 1998, and plaintiffs filed their action on March 8, 1999. The parties do not dispute that the action was timely filed in the Eighteenth Judicial District Court.[6] However, the Eighteenth Judicial District Court was subsequently found to be a court of improper venue for the action.[7]
Louisiana Civil Code article 3462 provides:
Prescription is interrupted when the owner commences an action against the possessor ... in a court of competent jurisdiction and venue. If the action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period. (Emphasis added.)
Although La. C.C. art. 3461 provides that unlike prescription, peremption may not be renounced, interrupted, or suspended, 1982 revision comment c explains that "when an action asserting a right subject to peremption has been commenced or *891 served as provided in La. C.C. art. 3462, the right has been exercised and so long as the action is pending the lapse of the period of peremption does not extinguish the right." Accordingly, in order to avoid peremption of their action, plaintiffs had to serve the Mayeuxs by process within the one-year peremptive period mandated by La. C.C. art. 2595. However, from our review of the record before us, the Mayeuxs were not served by process until March 11, 1999, which falls outside the one-year peremptive period.
The plaintiffs, however, assert that despite their failure to serve the Mayeuxs until March 11, 1999, their action is still timely. First, plaintiffs assert that the sale was not perfected until April 14, 1998, when the act of correction was executed, because the act of correction did not correct a clerical error but altered the substance of the sale and as such, had no retroactive effect. Alternatively, plaintiffs assert that if the act of correction did correct a clerical error and is given retroactive effect, it is retroactive to the date of recordation, and not the date of the original sale.
As stated previously, following the sale an act of correction was executed between Ethyl and the Mayeuxs. Louisiana Revised Statute 35:2.1, relating to affidavits of correction, provides in part:
A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.
B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.
The plaintiffs assert that the act of correction executed in this case, adding four additional tracts of land totaling approximately 11 acres, did no more than simply correct a clerical error in the original sale and as such, the sale was not completed until this act was executed on April 14, 1998. However, from our review of the record, we do not find that the trial court erred in rejecting this argument. First, both Ethyl and the Mayeuxs demonstrated that it was their intent that these four tracts of property be conveyed in the original sale, but that they were inadvertently omitted from the lengthy property description. The Mayeuxs, subsequent to the March 6, 1998 sale, even acted under the belief that the four tracts had already been conveyed in trying to convey a servitude to Exxon. Further, upon the execution of the act of correction, no additional consideration was paid for the four tracts of land. As such, we find no error in the trial court's determination that the act of correction reflected that the additional four tracts were bargained for and merely omitted from the sale, rather than reflecting that the date of the sale for the additional tracts was April 14, 1998.
Plaintiffs, however, further contend that if the act of correction is considered to have corrected a clerical error and is to be given retroactive effect, according to La. R.S. 35:2.1(B) it can only be retroactive to *892 the date of recordation, or March 10, 1998, and not to the date of sale, which was March 6, 1998. According to plaintiffs, if the act of correction is retroactive to March 10, 1998, their action is still timely because the Mayeuxs were served on March 11, 1999. However, this interpretation of the prescriptive articles rejects their plain and unambiguous meaning.
At the outset, we reiterate that according to La. C.C. art. 3459, the provisions on prescription governing computation of time also apply to peremption. Louisiana Civil Code article 3454 provides:
In computing a prescriptive period, the day that marks commencement of prescription is not counted. Prescription accrues upon the expiration of the last day of the prescriptive period, and if that day is a legal holiday, prescription accrues upon the expiration of the next day that is not a legal holiday.
Additionally, La. C.C. art. 3456 provides that if a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription. (Emphasis added.) A plain reading of these codal articles reveals that the date marking commencement, assuming in this case the recordation date of March 10, 1998, is not counted in computing the prescriptive period. However, because the peremptive period in this case is one year, peremption accrues upon the expiration of the day of the last year that corresponds with the date of commencement, which would be March 10, 1999. Therefore, the date to which the act of correction is retroactive is of no moment, as plaintiffs' action is still perempted under either scenario, the petition not having been served on the Mayeuxs until March 11, 1999.
Therefore, based on our review of the record and our analysis as outlined above, we find no error in the trial court's judgment sustaining the Mayeuxs' exception raising the objection of no cause of action[8] and dismissing the plaintiffs' action as to the Mayeuxs.

Motion to Dismiss
In addition to the May 25, 2000 judgment, plaintiffs also appeal from the July 14, 2003 judgment, dismissing the remainder of their suit. Plaintiffs assert that in rendering this judgment, the trial court improperly dismissed Ethyl as a party. However, in their brief before this court, plaintiffs failed to address this issue in their argument. Therefore, in accordance with U.R.C.A. Rule 2-12.4 and La. C.C.P. art. 2162, we consider plaintiffs' appeal of the July 14, 2003 judgment to have been abandoned and dismiss their appeal to the extent that it seeks review of that judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, sustaining the Mayeuxs' peremptory exception of no cause of action is affirmed. To the extent that plaintiffs appeal from the judgment of the trial court granting Ethyl's motion to dismiss, the appeal is dismissed. All costs of this appeal are to be borne by the appellants, Robert H. Wesson and H.R. 10 Profit Sharing Plan Account No. 2656-3314, individually and on behalf of all other common stock shareholders of Ethyl Corporation.
*893 MAY 25, 2000 JUDGMENT AFFIRMED; APPEAL OF JULY 14, 2003 JUDGMENT DISMISSED.
MCCLENDON, J., concurs and assigns reasons.
MCCLENDON, J., concurs.
Although I agree with the majority that the issue of proper venue is res judicata, I note that LSA-R.S. 13:4232 specifically provides an exception to the general rule "[w]hen exceptional circumstances justify relief from the res judicata effect of a judgment." See also Phillips v. Patterson Ins. Co., 98-1849 (La.App. 3 Cir. 5/19/99), 734 So.2d 1285, writ denied, 99-1826 (La.10/8/99), 750 So.2d 970. However, as I do not find that such exceptional circumstances are present in the case at bar, I respectfully concur.
GUIDRY, J., on rehearing.
In our original opinion, we indicated the trial court's October 8, 1999 judgment regarding venue was res judicata for purposes of the instant appeal. Accordingly, we refused to consider the correctness of that ruling in reviewing the subsequent judgment that the instant suit failed to state a cause of action because it was not filed timely in a parish of proper venue. Upon reconsideration, we find it is more appropriate to view the venue judgment in light of the law of the case doctrine, rather than pursuant to the doctrine of res judicata.[1] This rehearing is granted for that limited purpose.
Under the law of the case doctrine, an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case. Waffle House, Inc. v. Corporate Properties, Ltd., 99-2906, p. 4 (La.App. 1st Cir.2/16/01), 780 So.2d 593, 596. The Supreme Court has stated that the "`law of the case' doctrine applies to parties who have previously had the identical question presented and decided by an appellate court." Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.7/2/96), 676 So.2d 1077, 1079. In the instant case, we do not believe the law of the case doctrine is applicable to the venue judgment at issue because this Court has never addressed the substantive questions raised by the venue issue. Rather, on two prior occasions this Court has held that appeals taken by plaintiffs, to the extent that they sought review of the venue judgment, were untimely and should be dismissed. At no time has this Court previously addressed or ruled on the merits of the venue issue. See Wesson v. Mayeaux, 00-2636 (La.App. 1st Cir.6/4/01), writ denied, 01-2549 (La.12/7/01), 803 So.2d 972; H.R. 10 Profit Sharing Plan Account No. 2656-3314, et al. v. Mayeux, 03-0691 (La.App. 1st Cir.7/1/03).
Although factually different in several respects, the decision of the Louisiana Supreme Court in Phillips v. Patterson Insurance Company, 97-2748 (La.1/9/98), 704 So.2d 246, is instructive to the present situation. In Phillips, two defendants in a personal injury suit filed an exception of improper venue that was overruled by the trial court. The defendants did not seek appellate review of that ruling, but subsequently filed an exception of prescription on the grounds that venue was improper and they had not been served within one *894 year of the accident. The trial court sustained the exception of prescription as to the plaintiff's tort claims. On appeal, the Third Circuit reversed the trial court's judgment, concluding the law of the case doctrine precluded relitigation of the venue issue, which the trial court had rejected prior to sustaining the exception of prescription based on improper venue. However, the Supreme Court held the Third Circuit erred because a judgment merely overruling an exception does not constitute law of the case. As additional grounds of error, the Supreme Court noted that:
[T]he court of appeal has never previously addressed the venue issue, and the law of the case does not preclude the intermediate court from inquiring into the propriety of the trial court's previous ruling on venue. Even though defendants did not seek supervisory writs after the venue ruling, the trial court's decision on venue was reviewable by the court of appeal and by this court on appeal after trial on the merits, at least for prescription purposes. Phillips, 97-2748 at p. 2, 704 So.2d at 247.
Similarly, this Court has never addressed the merits of the venue issue in the instant case. Moreover, plaintiffs are not seeking review of the venue ruling for the purpose of reversing or modifying that judgment. Instead, they contend examination of the propriety of that judgment is essential to a review of the judgment granting defendant's exception raising the objection of no cause of action, since the latter judgment is based on the premise that plaintiffs did not timely file suit in a parish of proper venue. Under these circumstances, we do not believe the law of the case doctrine precludes review of the venue judgment for the limited purpose of deciding the preemption issue raised by defendants' exception of no cause of action. Therefore, we will now consider the correctness of the venue judgment.
La. C.C.P. art. 614 provides that a shareholder's derivative action "shall be brought in the parish of proper venue as to the corporation...." (Emphasis added). Since the provision does not specify what the parish of proper venue is as to the corporation, reference must be made to the general rules for venue found in La. C.C.P. art. 42. La. C.C.P. art. 42(4) provides that a suit against a foreign corporation licensed to do business in this state shall be brought in the parish where its primary business office is located as designated in its application to do business in the state. Defendants contend this provision is exclusive and, therefore, East Baton Rouge Parish (Ethyl's designated primary business office) is the only proper venue for this action under La. C.C.P. art. 614.
In opposition, plaintiffs argue that, because this shareholder's derivative action is seeking to rescind the sale of immovable property for lesion beyond moiety, it may be filed in the parish where the immovable property in located, which in this case is Iberville Parish. See La. C.C.P. art. 80. In so arguing, plaintiffs rely heavily on Cacamo v. Liberty Mutual Fire Ins. Co., 99-3479 (La.6/30/00), 764 So.2d 41, which dealt with interpretation of the venue provision for class actions provided by La. C.C.P. art. 593. La. C.C.P. art. 593 A was enacted by the same legislative act as La. C.C.P. art. 614, and utilizes similar language in providing that:
An action brought on behalf of a class shall be brought in a parish of proper venue as to the defendant. (Emphasis added).
In Cacamo, the Supreme Court held that the plain language of this provision authorized class actions to be brought in any parish proper under La. C.C.P. art. 42 or any of the supplementary provisions thereto *895 provided by articles La. C.C.P. arts. 71-85 or otherwise provided by law. The Court found nothing in the language of art. 593 to suggest a different result. Cacamo, 99-3479 at pp. 4-5, 764 So.2d at 44. Plaintiffs contend that, since the language of La. C.C.P. arts. 593 and 614 is virtually identical, the same interpretation should be applied to art. 614.
Plaintiffs' arguments ignore the fact that there is one significant difference in the language of the two provisions. Article 593 provides a class action shall be brought in a parish of proper venue as to the defendant, which the Supreme Court interpreted in Cacamo to mean any parish of proper venue. In contrast, article 614 provides that a shareholder's derivative action shall be brought in the parish of proper venue as to the corporation. "The" is a definite article, suggesting there is only one parish of proper venue as to the corporation in derivative actions. In interpreting laws, courts are required to give the words used their generally prevailing meaning. La. C.C. art. 11. Although the difference is slight, it appears the Legislature intended by the utilization of this distinct language in article 614 to achieve a difference result than that provided in article 593, particularly since both articles were enacted in the same legislative act. Accordingly, after careful consideration, we find that the parish of proper venue as to the corporation under art. 614 is that provided in La. C.C.P. art. 42, which in the instant case is East Baton Rouge Parish. Therefore, having concluded the trial court's venue judgment was correct, we adhere to the result reached in our original opinion.
REHEARING GRANTED WITHOUT ORAL ARGUMENT FOR THE LIMITED PURPOSE OF REVIEWING THE VENUE JUDGMENT OF OCTOBER 8, 1999.
NOTES
[1] Plaintiffs also appeal a judgment of the trial court sustaining the Mayeuxs' and Ethyl's declinatory exceptions raising the objection of improper venue. However, as discussed infra, the appeal from this judgment has been dismissed.
[2] H.R. 10 Profit Sharing Plan Account No. 2656-3314 filed the original petition; however, through an amended petition Robert H. Wesson was added as a plaintiff.
[3] Alternatively, plaintiffs named Henry C. Page, Jr. as a defendant, alleging gross mismanagement of corporate assets and breach of fiduciary duty owed to the corporation and shareholders. However, Mr. Page was subsequently dismissed from the action.
[4] The ruling erroneously refers to the August 20, 2002, judgment as August 8, 2002.
[5] La. C.C. art. 2589 provides in part:

The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable. Lesion can be claimed only by the seller and only in sales of corporeal immovables. It cannot be alleged in a sale made by order of the court.
[6] The parties assert that the action was timely filed because March 6, 1999, was a holiday and the next available day for filing was March 8, 1999. See La. C.C. art. 3454.
[7] Plaintiffs focus the majority of their argument on the issue of venue. However, because the October 8, 1999 judgment regarding venue is final, having been previously addressed by this court and the supreme court, the trial court's decision on that issue is res judicata for purposes of the instant appeal.
[8] The peremptory exception raising the objection of no cause of action is the proper procedural device for pleading prescription. Dowell v. Hollingsworth, 94-0171, p. 4 n. 6 (La.App. 1st Cir.12/22/94), 649 So.2d 65, 68 n. 6, writ denied, 95-0573 (La.4/21/95), 653 So.2d 572.
[1] In order for a judgment to be considered res judicata under La. R.S. 13:4231, it must be "final" in the sense that it "disposes of the merits in whole or in part." Burguieres v. Pollingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. A judgment sustaining a declinatory exception raising the objection of improper venue is an interlocutory judgment, since it determines only a preliminary matter without reaching the merits of a case. Savoie v. Rubin, 01-3275 (La.6/21/02), 820 So.2d 486, 488.