951 So.2d 339 (2006)
Jimmy SPRUELL
v.
Thomas DUDLEY.
No. 2006 CA 0015.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*340 Edward Grady Partin, Baton Rouge, for Plaintiff-Appellee Jimmy Spruell.
H. Craig Davidson, Jr., Baton Rouge, for Defendant-Appellant Thomas "Tommy" Dudley.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
PETTIGREW, J.
Defendant, Tommy Dudley ("Mr. Dudley"), appeals a judgment dated August 16, 2005, that permanently restrains and enjoins Mr. Dudley, his heirs, successors, and assigns, from constructing on and/or using his residential lot within Mill Creek Subdivision, Second Filing, as a right of way for utilities or ingress and egress to adjacent properties owned by Mr. Dudley that are situated outside of the subdivision. We affirm.

FACTS
In our previous opinion in this matter, we noted the following facts:
Mill Creek Subdivision is a residential subdivision situated in East Feliciana Parish. The same owners created Mill Creek Subdivision in two separate stageseach filing was made with reference to a plan of subdivision or plat and a set of restrictive covenants. The first filing consisted of fifteen (15) restricted lots, some fronting the public road, Hwy. 409, with the remainder situated on either side of the intervening Mill Creek Lane. The second filing consists of an additional twenty-two (22) lots on either side of an extension of Mill Creek Lane and an offshoot, Barrett Lane. Both Mill Creek Lane and Barrett Lane terminate in circular cul-de-sacs placed by the developers to indicate the completion of the subdivision. The restrictive covenants are essentially the same for both filings, and state that the lots in Mill Creek are not to be used for more than one family residence, and prohibit commercial use or further subdivision of the lots within the subdivision.
Spruell v. Dudley, 03-2697, p. 2 (La.App. 1 Cir. 10/29/04), 897 So.2d 144, 145-6.
Mr. Dudley is the owner of Lot 36 in Mill Creek Subdivision, Second Filing ("Mill Creek"), which is situated within the cul-de-sac on Barrett Lane. Mr. Dudley subsequently purchased approximately sixty (60) acres to the north at the rear of his Mill Creek lot from Dr. William J. Carona in two separate transactions. These parcels are referred to by Mr. Dudley as Lots 36-A and 36-A-1, consisting of approximately 16.849 acres and 41.98 acres, respectively. Said Lots 36-A and 36-A-1 lie outside of the Mill Creek development and are not burdened with, or subject to, the Restrictive Covenants of Mill Creek. These approximately sixty (60) acres are bounded on the west by other property belonging to Dr. Carona, whose western boundary fronts La. Hwy. 409.
Having constructed his home on Lot 36 in Mill Creek, Mr. Dudley, on June 25, 2003, filed a map showing the further subdivision of Lot 36-A into five smaller lots *341 and the unsubdivided larger tract, 36-A-1, consisting of 41.98 acres. Mr. Dudley also began building a twenty-five foot servitude of passage or right-of-way along the eastern boundary of the subdivision lot that he owned as a means of providing access within Mill Creek to the property acquired by Mr. Dudley that was situated outside of Mill Creek.
On July 10, 2003, plaintiff, Jimmy Spruell ("Mr.Spruell"), sued to enjoin Mr. Dudley from establishing a right-of-way across Lot 36 within Mill Creek. Mr. Spruell claimed that as a fellow Mill Creek property owner, he would suffer irreparable injury if Mr. Dudley was not prohibited or enjoined from constructing the servitude. A hearing was held on the preliminary injunction, and on August 20, 2003, the trial court granted a preliminary injunction prohibiting Mr. Dudley from constructing or using a right-of-way through Lot 36 of Mill Creek.
Mr. Dudley appealed said judgment, and in our previous opinion in this matter, this court affirmed the holding of the trial court. This court found that in creating a right of passage upon his lot within Mill Creek, Mr. Dudley was in effect alienating or encumbering a portion of his Mill Creek property. We further found that such action was not intended as a benefit conferred upon Mr. Dudley's lot within the subdivision, but rather for the use and benefit of new lots created by Mr. Dudley outside of the subdivision. We concluded that such action violated not only the "Restrictions on Use" provisions of the Mill Creek Restrictive Covenants, but also the covenants' prohibition against "Re-subdivision." Spruell, 03-2697 at p. 5, 897 So.2d at 148.
Thereafter, following a trial, the trial court granted a permanent injunction on August 16, 2005. That judgment is the subject of the instant appeal.

ASSIGNMENTS OF ERROR
On appeal, Mr. Dudley sets forth the following assignments of error and contends that the trial court erred in the following respects:
I. The trial court erred in holding that the Mill Creek restrictive covenants and subdivision plan restrict the use of a right-of-way across Dudley's Lot 36 to access Dudley's adjacent Lot 36-A.
II. The trial court erred in finding that Dudley's Lot 36-A is not landlocked when unrefuted facts, evidence, and expert testimony clearly show that access to the only other public road, Highway 409, is impossible or highly impractical.
III. The trial court erred in finding that the Mill Creek restrictive covenants supersede La. Civ.Code art. 689, which guarantees a right of passage to landlocked property.

STANDARD OF REVIEW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V., § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

*342 DISCUSSION
As to the initial error assigned by Mr. Dudley, we note that in our previous opinion in this matter, this court concluded that a right of passage way across Mr. Dudley's Lot 36 to access Mr. Dudley's adjacent Lot 36-A violates the Restrictive Covenants of Mill Creek. See Spruell, 03-2697 at 5, 897 So.2d at 148. No writ was taken by Mr. Dudley from our earlier decision in this matter that has now become final. Pursuant to the "law of the case" doctrine, an appellate court generally will not, as part of a subsequent appeal, reconsider its earlier ruling in the same case. H.R. 10 Profit Sharing Plan v. Mayeux, 03-0691, p. 2 (La.App. 1 Cir. 9/17/04), 893 So.2d 887, 893 (on rehearing), writ denied, 05-0868 (La.5/13/05), 902 So.2d 1031.
In Louisiana Land and Exploration Company v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997), this court discussed the "law of the case doctrine" and its application as follows:
The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur.
The reasons for the "law of the case" doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue.
When an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court's disposition on the issue considered usually becomes the law of the case, foreclosing relitigation of that issue either at the trial court on remand or in the appellate court on a later appeal. However, where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered.
Louisiana Land and Exploration Company, 95-2579 at 3-4, 681 So.2d at 65 (citations omitted).
Accordingly, this court's previous holding in this matter must be regarded as the law of the case. Through application of the law of the case doctrine, we decline to review this issue a second time on appeal.
The second and third errors assigned by Mr. Dudley are interrelated and will be addressed simultaneously, although we note that Assignment of Error No. 3 is, in our opinion, a misstatement or misinterpretation of the actual holding of the trial court.
Mr. Dudley relies upon La. Civ.Code art. 689 as the legal justification for his creation of a right of passage upon his lot within Mill Creek to access the lots he subdivided out of Lot 36-A. Louisiana Civil Code art. 689 provides:

*343 The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.
The provisions of the aforementioned code article must however be interpreted in reference to La. Civ.Code art. 694, which provides as follows:
When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude of passage.
It is undisputed that Lots 36-A and 36-A-1, which Mr. Dudley purchased from Dr. Carona, were parcels of a larger tract owned by Dr. Carona that was bounded on the west by La. Hwy. 409. The sale of these parcels to Mr. Dudley constituted a voluntary alienation by Dr. Carona that resulted in the voluntary enclosure of Lots 36-A and 36-A-1. This act entitled Mr. Dudley to a gratuitous right of passage across the remainder of Dr. Carona's property to La. Hwy. 409, in the same manner that Dr. Carona would have gained access to this portion of his property in the past.
The code articles provide and the current jurisprudence of this circuit recognizes that in a case where an estate becomes enclosed due to a voluntary act or omission of its owner, his neighbors are not bound to furnish a passage to him or his successors. La. Civil Code art. 693. If in the case of a partition or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the alienation or partition does not mention a servitude of passage. La. Civil Code art. 694. The intention of La. Civ.Code art. 689, which provides for a right of passage over neighboring property to the nearest public road, was to allow the owner of an estate enclosed through no fault of his own to obtain a servitude of passage across the property of his neighbor. Spruell, 03-2697 at 7, 897 So.2d at 149 (citing Sceroler v. Rancher, 99-2859, p. 7 (La.App. 1 Cir. 2/15/02), 808 So.2d 803, 808).
In connection with his testimony, Mr. Dudley conceded he was fully aware at the time he acquired Lot 36 of the Restrictive Covenants affecting lots within Mill Creek. Mr. Dudley further acknowledged that he was fully aware of said covenants when he purchased the adjoining sixty (60) acres from Dr. Carona. In Sceroler, 99-2859 at 9, 808 So.2d at 809, this court recognized an exception to the application of La. Civ. Code art. 694 as set forth in Stuckey v. Collins, 464 So.2d 346 (La.App. 2 Cir. 1985). The exception provides that where passage across the vendor estate (i.e., the remaining property of Dr. Carona) is impossible or highly impracticable, then an enclosed owner may seek an art. 689 servitude across the land of his neighbor even though the owner is legally entitled to an art. 694 servitude across his vendor's property. Id. at 348.
The question then for the trial court in this case was whether the servitude of passage across Dr. Carona's property would be so impossible or highly impracticable that Mr. Dudley would still be entitled to a right of passage across his Lot 36 within Mill Creek to Barrett Drive. This is a fact-intensive question, and depends upon the credibility of the witnesses and the findings of fact of the trial court. *344 Accordingly, we attach hereto and make a part hereof the trial court's Written Reasons for Judgment signed on July 26, 2005. These reasons fully support the trial court's finding that Mr. Dudley was not entitled to a servitude of passage on this basis.
After a thorough review of the record, the exhibits introduced at trial, and the trial court's Written Reasons for Judgment, it is obvious that the trial court considered the relevant legal issues and jurisprudence of this state. We cannot say that the trial court's findings of fact were manifestly erroneous.
For the foregoing reasons, the judgment of the trial court is hereby affirmed. All costs of this appeal shall be borne by defendant-appellant, Mr. Thomas Dudley.
AFFIRMED.

ATTACHMENT
JIMMY SPRUELL
VERSUS
TOMMY DUDLEY

NUMBER 35,322 DIV: A

20TH JUDICIAL DISTRICT COURT

PARISH OF EAST FELICIANA

STATE OF LOUISIANA

WRITTEN REASONS FOR JUDGMENT
In accordance with oral reasons for judgment May 19, 2005, written reasons for judgment August 7, 2003, and judgment of the First Circuit Court of Appeal rendered October 29, 2004, the Court finds that Lot 36, Mill Creek Subdivision, may not be used for a utility or ingress and egress right of way to properties outside of Mill Creek Subdivision.
Despite the Court's ruling that Lot 36 is restricted and cannot be used for utilities or ingress or egress right of way, Defendant maintains that he is still entitled to use a portion of Lot 36 for right of way purposes in accordance with La. Civil Code Art. 689. The Court disagrees.
Art. 689 provides as follows:
"The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion."
In order for Art. 689 to be applicable, the estate must be landlocked and have no access to a public road. In this case, the defendant is not landlocked. He has a right of passage to Louisiana Highway 409 over the land belonging to his vendor, Dr. Corona. La. Civil Code Art. 694, states:
"When in the case of partition, or a voluntary alienation of an estate or part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude or passage."
When the property purchased by Dudley was owned by his vendor, Dr. Corona, access to Louisiana Highway 409 was accomplished by traveling across the Corona property to Highway 409. Corona partitioned his property and sold the rearmost portion to Dudley. Art. 694 entitles Dudley to access Louisiana Highway 409 through the property of his vendor. This was the route previously used before the *345 sale and Corona owes Dudley a right of passage. Because Art. 694 applies, Art. 689 does not. The First Circuit Court of Appeal, in their previous judgment in this case, stated:
"Similar to the facts presented in Sceroler, although Mr. Dudley would clearly prefer that access to Lot 36-A be across his lot in Mill Creek, this court held in Sceroler that La. Civ.Code. Article 689 only applies if the owner of the enclosed estate "has no access to a public road." If the owner of the enclosed estate is entitled to a gratuitous servitude of passage over "the land on which passage was previously exercised, even if it is not the shortest route to the public road," under La. Civ.Code article 694, then technically La. Civ.Code article 689 does not apply. The "access to a public road" is available over the land on which the passage was previously exercised. Thus, where a gratuitous passage is available under Article 694, an enclosed landowner is not entitled to an Article 689 servitude across a neighbor's land." See Sceroler v. Rancher, 99-2859, 808 So.2d 803 (La.App. 1 Cir. 2/15/02), writ denied, XXXX-XXXX 816 So.2d 849 (La.5/24/02).
The only possible exception to the above rule of law cited by the defendant is expressed in Stuckey v. Collins, 464 So.2d 346 (La.App. 2 Cir. 1/23/85), in which the Court held:
"We hold now, however, that where passage across the vendor's land is impossible or highly impractical, an enclosed owner, even though legally entitled to an Article 694 servitude across his vendor's property, may seek an Art. 689 servitude across a neighbor's land."
The defendant asserts that he would be landlocked if not allowed to seek a right of passage under Art. 689 because the current passage is not available during certain times of the year due to flooding. Defendant claims that a "Stuckey exception" is warranted because of the extreme cost of making this previously used route available year round. Admittedly, the expert testimony regarding the improvements required for a right of passage (at the expert's proposed location) and the cost to make such improvements is extremely high. However, this Court believes the expert's cost to be overstated for many reasons. First, the expert testified that the cost, specifically the cost of building a bridge, was based on specifications necessary to meet parish standards. The Court believes these specifications to be inapplicable to the construction of a private drive, which is all Dudley claims he wants. Also, the route chosen by the expert for his cost estimate was the longest possible route from Louisiana Highway 409 to the defendant's property. When questioned by the Court about the considerable distance of this route, the expert, Mr. McCullough, agreed that it is the longest possibility. The defendant's expert completely ignored a much shorter route which would cross at a location where approximately two-thirds of the length of the right of way proposed is already improved, in use and would need no work or improvements by the defendant to reach his property. This, or course, lessens considerably the impact of Defendant's assertion that the cost of improving other routes compared to the cost of improving the route through Mill Creek Subdivision is reason enough to apply the so-called "Stuckey exception."
The law requires a weighing of the interests involved  the inconvenience or damage to the neighboring land owner from whom a right of passage is sought versus the impracticality, impossibility, or economic unfeasibility of using the existing right of passage. The Court does not *346 believe the facts of this case warrant the application of the "Stuckey exception."
The defendant relies on the fact that, in Stuckey, the Court pointed out the construction of a route through the vendor's property would "cost a fortune" or be "economically unfeasible." He asserts that the cost of improving a route through Dr. Corona's property would, likewise, be economically unfeasible. However, there are many differences between the facts in Stuckey and the facts of this case. In Stuckey, a route through the vendor's property would have to be constructed. Here, a route already exists for approximately two-thirds of the distance involved. As the First Circuit pointed out Sceroler v. Rancher, cited above, "We cannot say that the plaintiff's property was without access to Henderson Road when that was the only way of accessing the property from the public road before the land was subdivided and donated to the plaintiffs." In Stuckey, passage through the vendor's property had not been previously exercised, as it has here. In Stuckey, a route through the vendor's property was difficult because of the swampy condition of the property. Here, the only problem with the vendor's property is an occasional temporary creek rise.
In Stuckey, the Plaintiff was a single individual seeking access for the exclusive use of one small piece of property, otherwise landlocked. Contrasted with the Stuckey facts, the defendant herein, Dudley, seeks to develop property outside the subdivision for financial gain. Trial of this matter revealed testimony by several witnesses which led the Court to the inescapable conclusion that Defendant is a developer rather than a lone individual seeking access through his property for property donated to his daughter.
Jimmy Spruell testified:
"Mr. Dudley told me that he had lots that he was going to develop behind that right there . . . All I can do is tell you what Mr. Dudley told me in a conversation that he had submitted  the lots: there was going to be eight five-acre lots that would be more restrictive than our present subdivision. He said that each house would have to have thirty-two hundred square feet. It couldn't have an outbuilding, and he told me about mine and all my neighbors and everybody elseeverybody out there has one."
When recalled as a rebuttal witness, Mr. Spruell reiterated the same testimony recited above. He clearly stated that:
"He told me that he was going to have eight five-acre lots and he said it would only be eight more families coming in front of your house."
Maurice Whitcomb testified as follows:
"At one time Mr. Dudley invited me, or asked me, to please show him some of the subdivisions in East Feliciana Parish. That was back when I was on the Gas District Number Two, on the board. And we rode through two subdivisions and discussed what the gas board normally would do when putting in gas lines in a subdivision. I think the comment I'm trying to remember exactly what Mr. Dudley saidis, "Whit, I don't have a retirement like you have. This is my retirement." He never stated, directly, "I'm going to build a big subdivision." Or little subdivision, whatever. I assumed, at that time, when he told me that, that he was planning to develop he had, at that time, the 42 acresand I assumed that that's what he planned to do."
Warren Soulier testified:
"He brought me down there and showed me his property and said "I'm going to raise goats around here . . . A month or *347 two later, he did the same thing to my son, but he told my son a different story. He told him that this was going to be his retirement  he was going to build a subdivision."
The defendant's experts did testify regarding the high cost of improving the longest possible route. However, as stated above, there are shorter routes available which would cost considerably less to construct and/or improve. It is also important to note that Dudley was aware of the location of the previously used right of passage and should have taken into account the cost of any right of way improvements he might want to accomplish before purchase of the land. Perhaps Defendant's situation was best summarized by the testimony of Warren Soulier, who is not a resident of or land owner within Mill Creek Subdivision, who said:
"I don't care if he builds a subdivision, that's fine, you know. But I think anybody that buys a piece of property that's landbound, ought to get a right of way from the people he buys it from. He ought to not get that and then turn around and try to get a right of way. He ought to get a right of way first, then buy the property. That's what I would do, you know, if it was my money."
Mr. Soulier continued:
"I ain't going to spend more money than my little red wagon's worth. I ain't going to buy no doggone property I can't get to and then turn around and try to get a right of way to it."
There are other significant differences between the facts of this case and that of Stuckey. In Stuckey, the Court found that:
"Inconvenience and damage to defendant is minimal. Construction of a road across the property formerly owned by plaintiff's vendor would be impossible or highly impractical and economically unfeasible. Under these circumstances, the trial court correctly granted plaintiff a servitude across the defendant's land under Art. 689."
In Stuckey the Court found little damage to the neighboring land owner. If Dudley's right of way is allowed, great damage would result to the residents of Mill Creek Subdivision. As previously noted, allowing this right of passage would violate the restrictive covenants of Mill Creek Subdivision. These covenants were in place at the time Dudley purchased Lot 36 and he testified that he was aware of the existence of these covenants. The Louisiana Supreme Court, in Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (La. 1970), stated:
"Plaintiff's contend that these latter properties are subject to building restrictions which would negate the possibility of obtaining passage across them, and that therefore the route here sought is the "legally" shortest and most feasible. We are not impressed with this contention. These restrictions alone would not be controlling of a landowner's right to obtain passage from enclosed land across neighboring property."
While restrictive covenants alone are not controlling of a landowner's right to obtain a right of passage under Art. 689, restrictive covenants can be considered when balancing the interests between the parties.
Mill Creek Subdivision is served by a 1½ to 2 lane gravel road for the residents of approximately forty-one lots situated in Mill Creek Subdivision, first and second filing. Gravel roads present many obstacles to the users thereof, such as dust, washouts, higher maintenance, and increased *348 wear and tear to vehicles. If Mill Creek Subdivision is opened to additional use through the development of Defendant's property, the inconvenience to the residents thereof would be greatly exacerbated with respect to all of the problems referred to above.
Additionally, any deviation from the restrictive covenants may be grounds for a claim that the covenants have been abandoned, rendering the covenants unenforceable, La. Civil Code Art. 782. If this servitude is granted, then Mill Creek Subdivision owners would clearly be open to similar suits which would result in Mill Creek Subdivision and its gravel road access being burdened with even more traffic from other land owners accessing properties developed outside the subdivision.
The weight of the harm to Mill Creek Subdivision residents clearly outweighs the defendant/developer's burden of making improvements for a right of passage at several available locations other than the subdivision passage. Therefore, the preliminary injunction prohibiting the defendant from constructing and/or using a right of way for utilities and ingress and egress across Lot 36, Mill Creek Subdivision, to properties outside the subdivision, is hereby made permanent.
Signed this 26th day of July, 2005.
/s/ George H. Ware, Jr.
Judge George H. Ware, Jr.
PLEASE SERVE ALL COUNSEL OF RECORD