688 So.2d 1171 (1996)
Earl J. HEBERT, Jr., Plaintiff-Appellant,
v.
MID SOUTH CONTROLS AND SERVICES, INC., Defendant-Appellee.
No. 96-378.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
*1172 L. Lane Roy, Lafayette, for Earl J. Hebert, Jr.
Robert Lynn Manard, III, Frank Marion Buck, Jr., New Orleans, for Mid South Controls and Services, Inc.
Before DOUCET, C.J., and YELVERTON and PETERS, JJ.
PETERS, Judge.
The plaintiff, Earl J. Hebert, Jr., brought this suit against his former employer, Mid South Controls and Services, Inc. (Mid South), to recover damages for various alleged actions by Mid South. The complained of actions arose in the context of Hebert's employment with Mid South and his alleged ownership of corporate stock. The trial court granted a declinatory exception of lack of subject matter jurisdiction and a peremptory exception of res judicata filed by Mid South as to some of Hebert's claims and granted Mid South's declinatory exception of venue as to his remaining claims. Hebert has appealed.

DISCUSSION OF THE RECORD
To date in this litigation, little evidence has been presented to the trial court on the various issues, and the record consists primarily of allegations and pleadings. Thus, the procedural history of this suit is significant in resolving the pending issues.
This state court action was instituted in Lafayette Parish in the Fifteenth Judicial District on April 4, 1993, by Earl J. Hebert, Jr. against his former employer, Mid South Controls and Services, Inc., a Louisiana corporation domiciled in Jefferson Parish. In the initial petition, Hebert alleges that both an employer-employee relationship and a corporation-shareholder relationship existed between Mid-South and himself and that the deterioration of these relationships gave rise to his claim for damages.
In his original petition, Hebert contends that, as an employee of Mid South, he performed offshore construction and that, as one of its stockholders, he served on the corporate board of directors. According to his petition, Hebert claims to have sustained personal injuries as a result of an accident, which occurred on March 25, 1992, within the course and scope of his employment with Mid South. He claims that the accident occurred on a platform rig in the South Timbalier Block 172 area off the coast of Louisiana.
The petition further alleges that Mid South discouraged Hebert from filing a claim for compensation benefits because of the corporation's reluctance to have a workers' compensation claim filed against it. Hebert alleges that, to keep him from filing a claim, Mid South offered to continue his monthly salary of $3,100.00 and pay all of his medical expenses and assured him of his continued participation in the company's year-end bonus program. Based on these assurances, Hebert contends that he did not initially file a compensation claim. However, in his petition, Hebert claims that in November of 1992 he became concerned because of his inability to return to work and because of Mid South's change of attitude concerning his inability to work. In order to protect himself, Hebert decided to file a claim pursuant to 33 U.S.C. § 901 et. seq, the Longshore and Harbor Workers' Compensation Act (LHWCA). The record before us does not reflect the date this action was filed but does contain settlement documents, which confirm that it was filed.
Hebert's original petition alleges that Mid South contested his LHWCA claim in every possible way. In December of 1992, Hebert's physicians released him to return to work with certain restrictions. At that time, Mid South informed Hebert that there was no position in the company for him. According to Hebert's petition, Mid South's refusal to allow him to return to work was a result of his decision to pursue the LHWCA claim.
The petition additionally contains allegations that after Hebert filed his LHWCA claim, the method of shareholder profit distribution was changed to his detriment; he was removed from the board of directors; his disability benefits were only one-half of what they should have been because Mid South *1173 failed to properly place disability insurance on him; and Mid South attempted to take advantage of his destitute situation and purchase his Mid South stock at a rate far below its actual value. He contends that all of these actions by Mid South were in response to his LHWCA claim.
On June 11, 1993, Mid South responded to the petition by filing declinatory exceptions of improper venue and lack of subject matter jurisdiction, dilatory exceptions of vagueness and prematurity, and a peremptory exception of no cause of action. On June 26, 1993, a hearing[1] was held on these exceptions, and after completion of the hearing, the trial court took them under advisement. On September 2, 1993, the trial court issued a written ruling, granting the exception of vagueness and ordering Hebert to amend his petition to "allege whether or not the injury was sustained on the Outer Continental Shelf." The ruling on the exception of lack of subject matter jurisdiction was continued pending Hebert's amendment. The remaining exceptions were overruled. On September 30, 1993, Hebert amended his original petition to allege that the accident occurred on the Outer Continental Shelf.
No new filings occurred in this litigation for almost two years. However, during that time, Hebert's LHWCA claim was being pursued in the appropriate compensation district of the United States Department of Labor, Office of Workers' Compensation. On December 5, 1994, a joint application for approval of a settlement agreement was filed in that litigation, and on December 19, 1994, it was approved by an administrative law judge of the Office of Workers' Compensation. Under the terms of the agreement, Mid South paid Hebert $75,900.00 in settlement and reimbursement of expenses, and all claims pending before that forum were dismissed.
On August 9, 1995, the state litigation once again arose when Mid South filed new declinatory exceptions of lack of subject matter jurisdiction and improper venue and a peremptory exception of res judicata. At the hearing[2] on December 4, 1995, the issues decided by the trial court consisted of a claim of discrimination in employment because Hebert was not rehired[3] and claims for breach of an employment contract. At the conclusion of the hearing, the trial court rendered judgment in favor of Mid South. While the trial court's oral reasons for judgment are not clear as to the specifics under which it granted the exceptions, the judgment itself specifies that the trial court granted all three exceptions. The declinatory exception of lack of subject matter jurisdiction and the peremptory exception of res judicata were granted as to Hebert's claim for discrimination, and the declinatory exception of improper venue was granted as to his claims for breach of the employment contract. The effect of these decisions was to terminate the litigation in the Fifteenth Judicial District, and Hebert has appealed.

OPINION
Hebert asserts three assignments of error in his appeal. He contends that:
1. The trial court committed manifest error when it concluded that Hebert's cause of action for discrimination, based on Mid South's failure to reemploy him, was barred by res judicata;
2. The trial court committed manifest error when it concluded that it lacked subject matter jurisdiction over Hebert's employment discrimination claim; and
3. The trial court committed manifest error when it concluded that Lafayette Parish was a parish of improper venue for Hebert's claims of breach of employment contract.
*1174 If we do not have subject matter jurisdiction over this action, then we will be unable to reach the issue of res judicata. Therefore, we will first address the issue of lack of subject matter jurisdiction.
Subject Matter Jurisdiction
Mid South contends that the state court does not have subject matter jurisdiction to hear an employment discrimination claim when the discrimination is alleged to have resulted from the filing of a claim under the LHWCA. Relying on LeSassier v. Chevron USA, Inc., 776 F.2d 506 (5th Cir.1985), Mid South argues that because the accident occurred on the Outer Continental Shelf, jurisdiction lies exclusively under the LHWCA, particularly 33 U.S.C. § 948a. In LeSassier, the plaintiff was injured on a fixed platform located on the Outer Continental Shelf off the Louisiana coast. He filed a successful claim for benefits under the LHWCA and was then discharged by his employer. The plaintiff then brought a diversity suit for retaliatory discharge pursuant to La.R.S. 23:1361(B). In affirming a summary judgment in favor of LeSassier's employer, the Fifth Circuit Court of Appeal held that "there is no authority permitting [LeSassier] to invoke the state retaliatory discharge remedy over its LHWCA counterpart." LeSassier, 776 F.2d 506, 509.
The decision in LeSassier was based on the fact that the accident occurred on the Outer Continental Shelf, not on the idea that the LHWCA preempted the use of state law in all cases. In Wallace v. Ryan-Walsh Stevedoring Co., 708 F.Supp. 144 (E.D.Tx. 1989), the plaintiff was employed as a gearman at the Port of Beaumont in Beaumont, Texas. He was injured in an automobile accident during the course of his duties and filed both a LHWCA claim and a claim under Texas workers' compensation law. He ultimately filed an action for retaliatory discharge under Texas law, and his employer contended that the LHWCA, particularly 33 U.S.C. § 948a, preempted the state law claim. The Federal District Court explained the jurisdictional conflicts as follows:
Currently, maritime injuries fall within three jurisdictional spheres. At the seaward extreme, the LHWCA is the exclusive remedy. For injuries occurring on land outside the jurisdictional grasp of the LHWCA, state law alone governs. In the twilight zone, however, "maritime but local" injuries may be compensated by federal or state law.
Id. at 153 (citations omitted).
Thus, it held that the plaintiff, whose action fell within the twilight zone of jurisdiction, could choose to seek relief under either Texas law or under the LHWCA. However, in doing so, the court concluded that the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b), adopted the LHWCA as "the exclusive means for compensating injuries occurring as the result of operations conducted on the outer Continental Shelf." Id. (citation omitted).
However, the Louisiana Supreme Court reached a different conclusion in Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822 (La.1982), appeal dismissed for want of a substantial federal question, 464 U.S. 802, 104 S.Ct. 48, 78 L.Ed.2d 69 (1983). Thompson was injured on a stationary platform located on the Outer Continental Shelf off the coast of Louisiana. He brought suit in state court under state law for workers' compensation benefits. Thompson's employer filed an exception of lack of subject matter jurisdiction, which was rejected by the district court and maintained by this circuit on writs. In reversing the court of appeal, the supreme court stated that:
[W]e find that the Louisiana state courts do have subject matter jurisdiction over a claim for Louisiana compensation benefits because of an employment related accidental injury sustained by a Louisiana worker hired in Louisiana for work on a fixed platform outside the territorial waters of Louisiana.
Id. at 823.
In reaching this conclusion, the supreme court interpreted the holding in Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), to mean "that the federal political jurisdiction to which the Outer Continental Shelf Lands Act (43 U.S.C. § 1331 et seq.) is directed did not preclude a state court's concurrent judicial *1175 jurisdiction over matters traditionally within their province." Id. at 825.
We recognize that the federal court decisions are in complete conflict with the decision of the Louisiana Supreme Court. In determining the appropriate result in this case, we feel compelled to follow the guidance of the highest court of this state. Therefore, we conclude that the state district court does have subject matter jurisdiction of a claim for discrimination associated with retaliatory discharge or failure to rehire, and we reverse the trial court on that issue.
Res Judicata
Having concluded that the state court does have subject matter jurisdiction, we can now turn to the issue of whether Hebert's claim is barred by res judicata. La.R.S. 13:4231 provides as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Mid South argues that Hebert had an opportunity to bring his retaliatory discharge or failure to rehire claim pursuant to 33 U.S.C. § 948a as part of the LHWCA proceedings, but he failed to do so, and therefore, the judgment approving the compensation settlement in those proceedings extinguished this cause of action.
The LHWCA judgment approving the compromise contained the following language:
The Agreed Settlement provides for the release and discharge of the Respondent Employer, Mid South Controls and Services, Inc., and Respondent Commercial Union Insurance Company, Carrier, of liability for the payment to the Employee Claimant of any additional sums for past and future compensation and medical expenses, related in any way to the injury allegedly sustained by Employee on March 25, 1992, upon the payment to Employee of the lump sum settlement and reimbursement as specified, subject to payment by the Claimant, out of the lump sum settlement amount, of the specified attorney's fee.
(Emphasis added).
The LHWCA provision relative to discrimination against employees for bringing a claim for benefits imposes a civil penalty to the guilty employer of $1,000.00 to $5,000.00. 33 U.S.C. § 948a. However, the penalty is paid to a special fund administered under the LHWCA, rather than to the employee. The employee's relief consists of reinstatement to his job and compensation for lost wages. Id. The corresponding Louisiana statute allows the employee to recover the civil penalty, which is defined as the equivalent of his loss of income, not to exceed one year's earnings; reasonable attorney fees; and court costs. La.R.S. 23:1361.
It is significant to note that in this litigation, the state action was filed before completion of the LHWCA action and was still pending at the time the LHWCA settlement was reached. Mid South did nothing to attempt to consolidate these actions, and we do not find that the concept of res judicata was intended to apply to pending litigation. Therefore, we find that the trial court erred in granting the exception of res judicata.
Exception of Improper Venue
The trial court found that the proper venue for the employment contract claims was the Twenty-Fourth Judicial District Court in Jefferson Parish and ordered those claims transferred to that judicial district. In reversing *1176 this ruling, we need not reach the merits of the decision.
In relation to the time in which a declinatory exception of improper venue must be filed, La.Code Civ.P. art. 928(A) provides as follows:
The declinatory exception and the dilatory exception shall be pleaded prior to answer or judgment by default. When both exceptions are pleaded, they shall be filed at the same time, and may be incorporated in the same pleading. When filed at the same time or in the same pleading, these exceptions need not be pleaded in the alternative or in a particular order.
In this case, Mid South originally complied with this requirement by simultaneously filing declinatory exceptions of improper venue and lack of subject matter jurisdiction, dilatory exceptions of prematurity and vagueness, and a peremptory exception of no cause of action. However, all of these exceptions, other than the exception of lack of subject matter jurisdiction, were ruled upon by the trial court on September 2, 1993. The original exception of improper venue was overruled. A judgment overruling a declinatory exception of improper venue is an interlocutory judgment that is appealable because it may cause irreparable harm. La.Code Civ.P. art. 2083(A); A & P Boat Rentals, Inc. v. American Lloyd's, 592 So.2d 1361 (La.App. 1 Cir.1991). The supervisory writ procedure is also available to obtain an expedited review of the issue. Chambers v. LeBlanc, 598 So.2d 337 (La.1992). No appeal or application for supervisory writs was requested by Mid South as to the September 2, 1993 ruling.
The exception before us at this time is a second exception of improper venue, which cannot be considered as timely pursuant to La.Code Civ.P. art. 928(A). By not pursuing a review of the trial court's first ruling, Mid South waived any objection to the venue.

DISPOSITION
For the foregoing reasons, we reverse the trial court's judgment granting Mid South's exceptions of lack of subject matter jurisdiction, improper venue, and res judicata. The matter is remanded for further proceedings. All costs of this appeal are taxed against Mid South Controls and Services, Inc.
REVERSED AND REMANDED.
NOTES
[1] The record does not contain a transcript of the hearing or even a minute entry associated therewith. All that is available concerning the hearing is the trial court's later ruling.
[2] Judge Bertrand presided over the hearing on the first set of exceptions whereas Judge Hugh E. Brunson presided over the hearing on the second set of exceptions.
[3] Mid South refers to this part of the litigation as a claim for retaliatory discharge. Hebert attempts to draw a distinction between a retaliatory discharge action and one for failure to rehire. Under either state or federal law, the claim is simply one for discrimination.