# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-940


**M & L INDUSTRIES, L.L.C.**

**VERSUS**

**DEREK HAILEY, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 39818
HONORABLE LEO BOOTHE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.


**AFFIRMED.**

**Edmund McCollam**
**McMAHON & McCOLLAM**
**P. O. Box 1548**
**Houma, LA 70361-1548**
**Telephone: (985) 868-0104**
**COUNSEL FOR:**
    **Plaintiff/Appellant - M & L Industries, L.L.C.**


**William H. Parker, III**
**ALLEN & GOOCH**
**P. O. Drawer 3768**
**Lafayette, LA 70502-3768**
**Telephone: (337) 291-1270**
**COUNSEL FOR:**
    **Defendants/Appellees - Davis Insurance Agency and Shane Smith**

**Daniel J. McGlynn**
**McGLYNN, GLISSON & KOCH**
**P. O. Box 1909**
**Baton Rouge, LA 70821**
**Telephone: (225) 344-3555**
**COUNSEL FOR:**
    **Derek Hailey**

**Kris Allan Perret**
**P. O. Box 1909**
**Baton Rouge, LA 70821**
**Telephone: (225) 344-3555**
**COUNSEL FOR:**
    **Defendant/Appellee - Derek Hailey**

THIBODEAUX, Chief Judge.

Plaintiff, M & L Industries, L.L.C. (hereinafter "M & L"), secured and later cancelled four policies of insurance coverage through Davis Insurance Agency and its employees. It asserted a loss of refund due to the agent's and insurer's failure to advise of a minimum earned premium provision and the method of calculation. M & L's initially-filed suit in Terrebonne Parish was transferred to Concordia Parish pursuant to a judgment granting an exception of improper venue filed by the insurance agency. The Concordia Parish trial court then granted the insurer's exception of prescription and a motion for summary judgment, concluding that over a year had passed between M & L's knowledge of its cause of action and the filing of suit in a proper venue.

We conclude that venue was waived in Concordia Parish and the trial court was correct in finding that M & L's claim was perempted. We affirm.

I.

**ISSUES**

We must decide:

(1)   whether the venue ruling by Terrebonne Parish is subject to review; and,

(2)   whether the Concordia Parish district court erred in granting Defendants' Exception of Peremption and Motion for Summary Judgment.

II.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, M & L Industries, L.L.C., located in Terrebonne Parish, received word from their insurers that coverage would be cancelled on December 1, 2002, due to excessive claims in 2002. M & L's former agent, Derek Hailey of East

Baton Rouge Parish, a defendant, offered to assist M & L in finding replacement coverage. Hailey obtained the coverage through Shane Smith, Joseph Davis, and Davis Insurance Agency of Concordia Parish (collectively hereinafter "Davis"). The contracts were apparently negotiated over the telephone. Hailey faxed four application forms to M & L on November 27, 2002 and arrived that evening to collect a deposit of $179,173.00 to bind coverage. On December 5, 2002, M & L was informed that the balance due was $529,537.55. M & L purchased the coverage but informed all parties that less expensive coverage was being sought.

On February 21, 2003, M & L informed Davis by letter that coverage would be cancelled effective February 28, 2003. M & L had not yet received the policies purchased in December, but expected the refund of unearned premiums to be calculated under a "short rate" cancellation method, not to exceed the "normal" twenty-five percent (25%) rate.

On April 9, 2003, M & L's attorney notified Davis by letter that despite the cancellation in February, no unearned premiums had been refunded, that unearned premiums were due on all four policies, property, auto, general liability, and an umbrella policy, and that none of the policies had been received. The letter cited La.R.S. 22:637, which states that refunds are due 30 days after cancellation and La.R.S. 22:637.1 which provides for the accrual of interest on unpaid refunds.

On April 16, 2003, Fireman's Fund refunded an amount on the property policy later alleged to be $13,099.13 short.

On May 2, 2003, Evanston returned an amount on the general liability policy alleged to be $41,284.56 short; Scottsdale Insurance returned an amount on the auto policy alleged to be $11,274.82 short; First Specialty returned an amount on the umbrella policy alleged to $6,975.00 short.

2

On May 5, 2003, according to M & L's controller, the Evanston refund on the general liability policy was received by M & L.

On May 13, 2003, M & L wrote Davis complaining that the refund on the general liability policy, including interest, was short by $45,388.28.

On August 11, 2003, the liability policy was delivered, and M & L learned that the policy had a minimum earned premium of $275,000.00 based upon the prior year's sales figures of $22,357,000.00 as reported by the agents. This figure was not subject to audit, regardless of the actual sales figures of $4,191,871.00 for the covered period of December 1, 2002 through February 28, 2003. M & L asserts that had it known of this provision for a minimum earned premium in the policy, it would have estimated the sales figures at a more realistic and lower rate, resulting in a lower minimum earned premium.

M & L asserts that as a result of the agents' failure to advise, it suffered a loss of refund of $41,284.56 on the general liability policy plus approximately $20,000.00 on the property, auto, and umbrella policies combined.

On August 29, 2003, M & L's attorney wrote a demand letter to Davis outlining the events that had transpired, asserting a loss of refund totaling $61,358.69, and giving them fifteen (15) days to respond.

On April 29, 2004, seven months later, M & L filed suit against Davis in Terrebonne Parish. Derek Hailey was never served while the suit was pending in Terrebonne Parish.

On May 4, 2004, defendants, Smith and Davis and the Davis agency, were served in Concordia Parish where the insurance agency is located. They filed an Exception of Improper Venue and argue that the suit is an errors and omissions suit against an insurer which is governed by La.R.S. 9:5606. It is *delictual* in nature pursuant to *Roger v. Dufrene*, 613 So.2d 947 (La.1993). Therefore, venue is proper

under La.Code Civ.P. art. 74, where the work was done on the policies and where the alleged wrongful conduct occurred. M & L asserts that the cause of action is breach of contract and that venue was proper under La.Code Civ.P. art. 76.1 in Terrebonne Parish where the contract was agreed to, paid for, and where the policies were delivered.

The Terrebonne Parish district court granted Defendants' Exception of Improper Venue and ordered the suit transferred to Concordia Parish on July 14, 2004.

On August 16, 2004, M & L's suit was filed in Concordia Parish. Davis filed an Exception of Peremption and Motion for Summary Judgment asserting that the suit against the insurance agency and its employees was not filed in a court of *proper* venue within one year of M & L's knowledge of its cause of action pursuant to the governing statute, La.R.S. 9:5606. The Concordia Parish district court granted Davis's exception and motion and dismissed M & L's suit. M & L filed this appeal asserting errors in the judgments of both trial courts.

III.

## LAW AND DISCUSSION

### Standard of Review

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court:

    a.    the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

4

b. the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

**Venue**

M & L did not appeal the Terrebonne Parish district court ruling or seek supervisory review of the judgment granting the exception of improper venue. M & L now contends for the first time that the original trial court in Terrebonne Parish erred in maintaining the exception of venue in July 2004 and in ordering the transfer of its suit to Concordia Parish. It asserts that the venue ruling was an interlocutory ruling and is properly on appeal before this court "in connection with later rulings on other related matters . . . which are final judgments." M & L cites *Savoie v. Rubin,* 01-3275 (La. 6/21/02), 820 So.2d 486, and *H.R. 10 Profit Sharing Plan v. Mayeaux*, 03-0691 (La.App. 1 Cir. 9/17/04), 893 So.2d 887, *writ denied,* 05-0868 (La. 5/13/05), 902 So.2d 1031.

The *Rubin* case holds that a venue ruling is an interlocutory ruling, and that dismissal based upon improper venue is not a termination of suit on the merits that allows a party to go forward with a malicious prosecution suit. It does not address whether a venue ruling that is not appealed, or made the subject of review, within the established time delays for writs and appeals, can later be reviewed in connection with a final judgment on the matter. The *Mayeaux* case follows the Louisiana Supreme Court decision in *Phillips v. Patterson Ins. Co.,* 97-2748 (La. 1/9/98), 704 So.2d 246. In *Phillips,* the defendant filed a timely exception of venue, which was overruled. No writ or appeal was taken. The defendant then filed an exception of prescription based on improper venue, and that exception was sustained. *Phillips* is a two-page opinion and provides no detail as to how the same court denied an exception to venue then granted an exception of prescription based upon improper venue.

In *Phillips*, the Louisiana Supreme Court explained that the trial court's judgment overruling the exception to venue did not constitute the law of the case where the appellate court had never reviewed the venue issue, nor did it preclude the appellate court from inquiring into the propriety of the trial court's previous venue ruling. It then stated, "[e]ven though defendants did not seek supervisory writs after the venue ruling, the trial court's decision on venue was reviewable by the court of appeal and by this court on appeal after trial on the merits, at least for prescription purposes." *Phillips*, 704 So.2d at 247. The *Phillips* court further stated, "to hold that a defendant waives a timely filed objection of improper venue by not seeking supervisory writs after the timely exception is overruled goes against the policy of not presuming a waiver of rights, which should only be done expressly." *Id*.

The *Mayeaux* case cited by M & L is a first circuit case that more closely resembles the facts in this case as it involved the granting of a venue exception and

the transfer of the case to another parish. The *Mayeaux* court in its original opinion characterized the first trial court judgment on venue as res judicata for the purposes of the appeal of the second judgment from the transferee court dismissing the case based upon peremption due to untimely filing in a court of proper venue. On rehearing, the Mayeaux court decided that it was more appropriate to view the venue judgment as law of the case, rather than under res judicata principles. The *Mayeaux* court then found the law of the case doctrine inapplicable because the appellate court had never before reviewed the venue issue, and a previous appellate ruling on the identical issue is required before invoking the law-of-the-case doctrine, pursuant to *Avenue Plaza, L.L.C. v. Falgoust,* 96-0173 (La. 7/2/96), 676 So.2d 1077.

The *Mayeaux* court stated that it had on two prior occasions held that appeals taken by the plaintiffs seeking review of the venue ruling were untimely and should be dismissed. However, the court then, without further addressing the untimeliness issue, analogized and followed *Phillips*, deciding to review the venue ruling. In so doing, the *Mayeaux* court stated that, "we do not believe the law of the case doctrine precludes review of the venue judgment for the limited purpose of deciding the preemption issue[.]" *Mayeaux*, 893 So.2d at 894. Clearly, the law of the case did not preclude review of the venue issue because the law of the case doctrine did not apply at all. However, that does not preclude other reasons for finding the venue issue not a subject for review, such as untimeliness.

We are not convinced that the *Mayeaux* court properly applied *Phillips,* or that the Supreme Court in *Phillips* intended such an expanded application of its holding in a two-page opinion where no details were given. More specifically, in *Phillips,* the venue exception was denied, rather than granted, as here. The plaintiff in *Phillips* was allowed to go forward in the parish of its choosing, and there was never the necessity of having two courts look at the issues. In the present case,

7

however, where the venue exception was granted and the case was transferred to a second district court in another parish, M & L had to physically move its suit, and a second court was called upon to handle the case. Yet, M & L failed to apply for a supervisory writ or file an appeal and allowed the case to remain in the new venue and go to trial there. We do not believe that *Phillips* was intended to treat the *granting* of a venue exception resulting in transfer the same as a *denial* of a venue exception.

Davis asserts that M & L's objection to venue is untimely. They argue that the granting of an exception of improper venue is an interlocutory judgment which has been held to cause irreparable injury and must be reviewed or it is later waived. Davis cites *McGowan v. Gomez*, 254 So.2d 307, 309 (La.App. 4 Cir. 1971), which states:

> Article 2083 of the Code of Civil Procedure provides that appeals may be taken from final judgments or from interlocutory judgments which may cause irreparable injury. Judgments maintaining exceptions of improper venue have been classified as interlocutory in nature, but the courts have freely permitted appeals from such interlocutory judgments when there was any reasonable chance of irreparable injury being caused thereby. In this case it is apparent that the judgment of the Nineteenth Judicial District Court determining the Parish of East Baton Rouge to be of improper venue was an appealable interlocutory judgment. The very existence of the plaintiff's suit depended upon the correctness of his choice of venue, and it can hardly be said that an adverse ruling on this point would not have caused the plaintiff to suffer irreparable injury.
>
> Since the judgment of the Nineteenth Judicial District Court was not appealed, it is final and determinative of the question of the impropriety of the plaintiff's choice of venue.

*See also, Glazer Steel Corp. v. LaRose Shipyard, Inc.*, 368 So.2d 205 (La.App. 1 Cir. 1979).

In the present case, we note that M & L did not attempt to avail itself of any remedy whatsoever with regard to the adverse venue ruling and transfer of the case to Concordia Parish. It did not seek to appeal the venue ruling as an interlocutory judgment that might cause irreparable harm, nor did it seek supervisory review of the venue ruling as an unappealable interlocutory judgment. In fact, at the trial of the venue exception, the Terrebonne court asked what would happen to the venue issue if the case were found to be a hybrid of tort and contract, and M & L's attorney responded, "Well, I would take a writ."[1] Yet, when the ruling came down in favor of Davis, M & L did not seek review of any kind.

Other jurisprudence suggests that M & L cannot now seek review or appeal of the interlocutory venue ruling in Terrebonne Parish after the Concordia Parish district court has rendered a final judgment. More specifically, in *Danny Weaver Logging, Inc. v. Norwel Equipment Co.*, 33,793 (La.App. 2 Cir. 8/23/00), 766 So.2d 701, the plaintiff filed suit in Caddo Parish. The Caddo Parish district court granted the defendant's declinatory exception of improper venue, but rather than transfer the suit to East Baton Rouge Parish, as argued by the defendant, the court transferred the suit to Bienville Parish, which was clearly an adverse ruling for the defendant. However, the defendant failed to appeal the Caddo ruling. When the defendant again argued improper venue in Bienville Parish, the Second Circuit Court of Appeal held that the defendant's failure to timely appeal the Caddo Parish district court's order transferring the case to Bienville Parish resulted in the waiver of venue in Bienville Parish. There, the second circuit, defining the Caddo ruling as an appealable interlocutory judgment ruling, articulated as follows:

---

[1] Shane Smith, Joe Davis and Davis Insurance Agency filed a Motion for Designation of Record and attached the Terrebonne Parish transcript from the venue hearing for this court's use in deciding the venue issue. We grant their motion.

While the merits of the disputed articles on venue have been twice considered in the district court rulings and are now reurged to this court, we choose to affirm the ruling that Bienville Parish is the proper venue not on the merits of the venue articles, but on the flawed procedure chosen by Norwel resulting in the waiver of venue in this case.

*Danny Weaver Logging, Inc.*, 766 So.2d at 703. The court then explained:

The Louisiana Supreme Court has indicated that an interlocutory ruling denying an exception of venue is appealable either by ordinary appeal under La. C.C.P. art. 2083 or through the supervisory writ process pursuant to La. C.C.P. art. 2201. *Chambers v. LeBlanc*, 598 So.2d 337 (La.1992) and *Herlitz Construction Co. Inc. v. Hotel Investors of New Iberia, Inc.,* 396 So.2d 878, note 1 (La.1981). The error of a trial court in denying a proper venue exception *or in transferring the case* to an improper venue cannot "as a practical matter" be corrected on appeal after final judgment. *Herlitz*, [396 So.2d 878 (emphasis added)], and *Caldwell v. VAC Federal Credit Union*, 545 So.2d 697 (La.App. 2d Cir.1989) (where this court allowed an appeal by the plaintiff of the interlocutory order transferring the case to another district court following the grant of an exception of venue).

. . . .

Generally speaking, both avenues of appeal — ordinary appeal and supervisory writ appeal — are subject to time constraints which an appellant must follow in bringing the appeal. La. C.C.P. arts. 2087 and 2123 establish the delays for taking devolutive and suspensive appeals. Rule 4-3 of the Uniform Rules--Courts of Appeal provides for a period "not to exceed thirty days from the date of the ruling at issue" in which the party aggrieved by the interlocutory ruling must begin the supervisory writ process.

However, for the ordinary appeal of an interlocutory ruling under La. C.C.P. art. 2083, the statutory events commencing the running of appellate time delays, which are the same for both devolutive and suspensive appeals, do not occur, leaving the timing for the taking of such appeal unclear. The events listed in La. C.C.P. arts. 2087(A)(1) and (2) and 2123(A)(1) and (2) commence the appellate delays upon "any of the following:

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding

the verdict, as provided by Article 1974 and Article 1811, if no application has been timely.

(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914."

Although these procedural events do not follow after the denial of an exception for venue *or an order transferring the case* to an improper venue, the timely exercise of the right of appeal of such interlocutory rulings should nevertheless occur before a party chooses to further utilize the judicial process in the wrong venue. Otherwise, the party will waive reassertion of the venue issue.

Erroneous interlocutory rulings falling outside the appellate protection of La. C.C.P. art. 2083 are "not independently and immediately appealable" and "must await rendition of an appealable judgment in the cause." *People of Living God v. Chantilly Corporation*, 251 La. 943, 207 So.2d 752, 753 (1968). *For venue, however, the jurisprudence has required the early appeal of an erroneous ruling because "once the case is tried on the merits in the wrong venue, an appellate court has no practical means of correcting the error on appeal."* *Herlitz*, [396 So.2d 878]. Any disadvantage that an incorrect ruling on venue may pose to the defendant does not impact the merits of the case, and therefore does not outweigh the costs of the subsequent employment of the resources of the judicial process in that venue. *Tinsley*, [602 So.2d 1153]. *For judicial efficiency and other "practical" considerations*, the defendant is deemed to waive the right to reurge the venue issue once the case proceeds. *Cf. Hebert v. Mid South Controls and Services, Inc.*, 96-378 (La.App. 3d Cir.10/9/96), 688 So.2d 1171, *cert. denied*, 522 U.S. 814, 118 S.Ct. 61, 139 L.Ed.2d 24 (1997).

*Id*. at 703-04 (emphasis added). The court further stated:

An additional reason for requiring a timely appeal of an adverse interlocutory venue ruling is to prevent the defendant from seeking other rulings from the district court while indefinitely withholding the erroneous venue ruling for later appeal before trial on the merits. For example, without a requirement for the timely appeal of an adverse interlocutory venue ruling, a defendant could seek summary judgment from the district court of wrong venue

to first test the defense in that court before choosing whether to appeal or waive the venue issue.

*Id.* at 704-05. *See also, Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*, 36,005 (La.App. 2 Cir. 5/8/02), 817 So.2d 427.

The above reasoning applies herein. Whether a venue ruling is appealable because it causes irreparable harm or reviewable pursuant to an application for supervisory writs, review must be sought in a timely manner or the venue issue is waived. Accordingly, M & L waived venue in Concordia Parish by failing to timely file an appeal or seek writs when Davis's exception to venue was granted by Terrebonne Parish district court and M & L's case was transferred to Concordia Parish in July 2004.

### Peremption

M & L does not deny that the one-year peremptive period applies under La.R.S. 9:5606, governing actions against insurance companies and its agents, regardless of whether the cause of action is in tort or breach of contract. It asserts that the Concordia Parish district court erred in granting Davis's Exception of Peremption and Motion for Summary Judgment because M & L discovered the breach by the agents when it received and read the liability policy on August 11, 2003, filed suit in Terrebonne Parish on April 29, 2004, and perfected service on the Davis defendants on May 4, 2004, all within one year of the discovery of the cause of action in August 2003. M & L argues that where the suit was filed *and service obtained* prior to the expiration of the peremptive period, even though deemed to have been filed in an improper venue, the expiration of the peremptive period does not affect a pending lawsuit which has been transferred to a court of alleged proper venue. In support of this proposition, M & L cites the official comment to La.Civ.Code art. 3461.

12

Louisiana Civil Code Article 3461 provides that peremption can not be renounced, interrupted, or suspended; but its comment states that, nevertheless, when an action subject to peremption has been commenced or served, the right has been exercised and peremption does not extinguish the right. La.Civ.Code art. 3461, and comment (c). M & L also cites *Farrell v. Farrell*, 555 So.2d 39 (La.App. 1 Cir. 1989); *Mayeaux*, 893 So.2d 887; *Phillips*, 704 So.2d. 246; *Capitol House Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, 98-1514 (La.App. 1 Cir. 12/10/98), 725 So.2d 523.

Davis asserts that the trial court properly found the suit peremption because the suit was not filed in either court until over a year after M & L knew or should have known that it had a cause of action. Primarily, the Davis defendants argue that M & L had knowledge of a cause of action against them on April 9, 2003, when M & L's attorney wrote them requesting the overdue refunds and citing the statutes indicating a cause of action; yet, M & L did not file suit in a *proper* venue until August 16, 2004, well over a year later, when the suit was filed in Concordia Parish. Davis also points to the letter of May 13, 2003 written by M & L's controller after having received the liability policy refund. This letter calculates the refund and shortage, and makes demand on the amount due. Davis asserts that this letter also proves knowledge and was written over a year before filing suit in the proper venue on August 16, 2004. Davis further argues that even using the date alleged by M & L as the date it became aware of a cause of action, August 11, 2003, when M & L received and read the policy provision, M & L still failed to file suit in the *proper* venue until August 16, 2004, which is over a year after discovery of its cause of action.

Finally, Davis argues that even the first suit was prescribed, where it was filed in Terrebonne Parish on April 29, 2004, over a year after M & L's attorney

wrote to Davis on April 9, 2003 requesting the unpaid refunds and citing the statutes indicating a cause of action.

Davis cites *Burns v. Goudeau*, 04-821 (La.App. 3 Cir. 11/10/04), 888 So.2d 1031, a legal malpractice case governed by La.R.S. 9:5605, which contains identical language as the statute at issue herein with regard to the necessity of filing timely in a court of *proper* venue. The statute at issue in this case provides in pertinent part as follows:

> [La.R.S. 9:]5606. Actions for professional insurance agent liability
>
> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in *a court of competent jurisdiction and proper venue* within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect. (Emphasis added).
>
> . . . .
>
> D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

In *Burns v. Goudeau*, where the issue was legal malpractice, and the language of the legal malpractice statute, La.R.S. 9:5605, is identical in pertinent part to La.R.S. 9:5606 above, the suit was initially filed in Bossier Parish in October of 2001. An exception of improper venue was filed, and the suit was transferred to St. Landry Parish on February 6, 2002. The defendants filed an exception of peremption. Finding that the plaintiff knew of his cause of action in October of 2000, the St.

14

Landry district court granted the defendants' exception and dismissed the plaintiff's suit. In affirming the trial court, this court articulated as follows:

> Furthermore, La.R.S. 9:5605(A) requires that a suit must be "filed in a court of competent jurisdiction and proper venue" within the one year of discovery or imputed discovery. In this case, venue was proper in St. Landry Parish, not Bossier Parish. Although transferred earlier, the matter was not filed in St. Landry Parish until February 6, 2002. Thus, the matter was not timely filed unless the date of the plaintiff's discovery or constructive discovery of the failure to file was after February 6, 2001. As seen above, the trial court's reasons reveal a finding that the date of discovery or constructive discovery was well before this date.

*Burns*, 888 So.2d at 1036.

In the present case, our first task is to determine the date on which M & L became aware of its cause of action against the Davis defendants. Davis asserts that the date was April 9, 2003 when M & L wrote Davis citing the precise statutes indicating a cause of action against them.

The letter of April 9, 2003 from M & L's attorney referenced the cancellation date of February 28, 2003, the $708,746.55 paid by M & L in premiums on the four policies, a request for adjustments due to coverage changes, the fact that M & L had received neither refunds nor policies, and further contained the following paragraph:

> Under Louisiana Law, La.R.S. 22:637 et seq. refund of unearned premiums must be made within Thirty (30) days following such cancellation. Interest under 22:637.1 becomes due after the 30 day period has expired on all such refunds due.

It is clear from the above correspondence that M & L through its legal representative knew of a cause of action for obtaining the refunds on April 9, 2003 when the letter was written. If no refunds had been forthcoming, M & L could have sued for the refunds. However, the refunds began to come in by April and early May

15

2003, and the record indicates refunds were received in the total amount of $485,561.12. The first suit was not filed until April 29, 2004. Therefore, this suit is not for unpaid refunds. The suit was filed because Davis reported higher sales figures than M & L wanted to report and failed to inform M & L of the provision in the policies regarding the calculation of refunds, and in particular the provision in the liability policy requiring a minimum earned premium of $275,000.00.

M & L asserts that it was not until the policies began to come in on August 11, 2003, that it learned of the language in the policy regarding the minimum earned premium and, therefore, learned of the cause of action. However, we find evidence of knowledge in the May 13, 2003 letter written by M & L's controller, Mr. Charles Williams, CPA, to Davis. That letter states in pertinent part as follows:

> In reviewing the General Liability Insurance refund received May 5, 2003, there was a substantial underpayment on the premium refund. The way I understand it, the premium is calculated on the estimated annual sales of $22,357,000 with a rate of $12.30 per thousand which when computed the amount is approximately $275,000.00. . . . On March 2, 2003, I sent an e-mail to Shane Smith informing him of our actual sales for the period December 1, 2002 through February 28, 2003 as $4,191.87[]. The premium based on $12.30 per thousand should be calculated as follows:
>
> $4,191,871/1000 = 4192 x 12.30 = $51,561.60 in earned premium

The letter from Mr. Williams further broke down the total premium paid, deducted the actual earned premium, showed the overpayment, actual refund, interest due, and requested an additional $45,388.28 due on the refund. The last paragraph stated:

> Interest is accruing on the unpaid balance at $20.36 per day. This interest is mandated by the State of Louisiana on any refund amount that is not refunded within 30 days of cancellation of the policy. I intend on pursuing collection of the refund due us as well as the interest incurred.

16

Therefore I am demanding immediate payment of the above.

Based upon the foregoing, M & L knew before May 13, 2003 that the sales figure used for calculating the earned premium was $22 million plus, which resulted in an earned premium of $275,000.00. Moreover, the May 13 letter states that M & L had already sent an e-mail to Davis on March 2, 2003 giving them actual sales figures of only $4 million plus to use in calculating the earned premium. Our question is: why send the e-mail if not already aware that the wrong figures were reported and that the refund would be based upon an earned premium of $275,000.00? We do not have the answer to that question. What we do know is that when the refund was received on May 5, 2003, M & L knew, or should have known, that it was short, and with Mr. Williams, CPA, aboard, could have quickly calculated the shortage and how it occurred.

Accordingly, our query for the date of first knowledge might end here with the May 5, 2003 receipt of the liability policy refund. However, the deposition of M & L's controller, Mr. Williams, CPA, indicates that the general liability policy was not the first received, and that the general liability refund was not the first refund received. In fact, an August 29, 2003 letter to Davis from M & L's attorney, demanding exact shortages on all four policies, states as follows:

> Although cancellations were effective on February 28, 2003, despite repeated requests directed to the agency, the first return of unearned premiums did not occur until April 16, 2003, wherein a refund in the amount of $54,110.87 was received from Fireman's Fund McGee. Thereafter the following refunds were received. . . .

It is true that the Fireman's Fund refund was only $13,099.13 short, based upon the above-referenced correspondence and our reconciling the property policy coverage with the Fireman's Fund refund. However, M & L knew or should have known, because of this shortage on April 16, 2003 when it received the first

17

refund, that the calculation method of Davis differed from the calculation method of M & L, that the refunds were going to be short, and that a battle would ensue. This is particularly true in light of the e-mail sent on March 2, 2003 providing correct sales figures and indicating that calculations were underway. This is also true in light of the level of sophistication of the parties involved. M & L is apparently a successful business; its controller is a CPA; and it had its attorney involved twelve days after the 30-day delay period for the refunds. Our jurisprudence holds:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.

*Roadhouse Bar-B-Que, Inc. v. Certain Underwriters at Lloyds*, 04-1697 (La.App. 3 Cir. 5/4/05), 909 So.2d 619, 623 (quoting *Campo v. Correa*, 01-2707 pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-511 (citations omitted)).

Accordingly, we find that M & L had constructive knowledge of a cause of action against Davis for the shortages complained of on April 16, 2003, when M & L received the first refund after previous correspondence from its attorney, requesting the refunds and interest, and from its controller, delivering correct figures to be used in calculating the refunds.

Because the first refund putting M & L on notice of a cause of action for the shortages was received on April 16, 2003, and the first suit was not filed until April 29, 2004, we find that the cause of action is perempted without determining whether the first suit was filed in a court of proper venue pursuant to La.R.S. 9:5606.

18

IV.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the Concordia Parish district court granting Defendants' Exception of Peremption and Motion for Summary Judgment. All costs are assessed against Plaintiff, M & L Industries, L.L.C.

**AFFIRMED.**