GUIDRY, J.
 

 |2A former wife appeals a judgment holding her liable to repay sums of money provided by her ex-spouse during the course of them marriage.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 The parties to this action, Herbert Rives Alexander, Jr. and Maria Carmen Palazzo, were married in 1997. Prior to the wedding, the parties executed a marriage contract in which they agreed to establish a separate property regime. During the course of the marriage, Alexander disbursed the total sum of $190,000 in four different transactions as follows:
 

 Check number 10522 for $100,000 payable to Palazcoe, LLC dated June 29, 1999.
 

 A transfer on March 23, 2000 of $50,000 to an investment account for Palazcoe managed by Palazzo.
 

 Check number 10797 for $20,000 payable to Carmen Palazzo dated November 15, 2000, and endorsed for deposit in Pa-lazcoe’s bank account.
 

 Check number 09710 for $20,000 payable to H.R. Alexander, Jr. dated August 24, 2001,and endorsed for deposit in Pa-lazcoe’s bank account.
 

 In 2003, the parties separated and signed an agreement wherein the couple stipulated to the return of certain movable property belonging to each party respectively, to a visitation and custody schedule with their black Labrador, Princess Girl, and to payment of monies owed to Alexander. No monies were paid to Alexander and on November 17, 2005, Alexander filed a petition against Palazzo to recover the amount of $190,000 plus interest.
 

 Palazzo responded to the petition by filing exceptions urging the objections of improper venue and prescription and generally denied liability to repay the money requested in Alexander’s petition. The trial court deferred ruling on the exceptions until the trial on the merits. Prior to trial, Alexander withdrew his demand for interest and simply maintained his action to recover the principal amounts paid. Following a trial, at which both parties testified, the trial court overruled the exceptions filed by Palazzo and rendered judgment in favor of |3Alexander, awarding him the $190,000 as prayed for by Alexander. Palazzo appealed.
 

 ASSIGNMENTS OF ERROR
 

 Palazzo contends that the trial court erred in rendering the judgment appealed in the following respects:
 

 1. The Honorable Trial Court erred in its determination that the cause of action was not founded on monies tent.
 

 2. The Honorable Trial Court erred in denying the Exception of Prescription.
 

 3. The Honorable Trial Court erred in denying the Exception of Improper Venue.
 

 
 *952
 
 4. The Honorable Trial Court erred in casting Defendant in Judgment for sums paid to a third party.
 

 DISCUSSION
 

 In order to resolve the issues raised on appeal, we must determine the nature and effect of the agreement between the parties. The proper interpretation of a contract is a question of law subject to
 
 de novo
 
 review on appeal.
 
 Montz v. Theard,
 
 01-0768, p. 5 (La.App. 1 Cir. 2/27/02), 818 So.2d 181, 185. When considering legal issues, the reviewing court accords no special weight to the trial court, but conducts a
 
 de novo
 
 review of questions of law and renders judgment on the record.
 
 Montz,
 
 01-0768 at 5, 818 So.2d at 185.
 

 At trial, both Alexander and Palaz-zo testified that Alexander advanced the money in dispute to contribute to investment property and for stock purchases. When asked to confirm that none of the money was used for her own personal use, Palazzo replied “it was all either in investment property or investment in stocks. None of it was for my personal use.” Pa-lazzo further explained that it was her understanding that Alexander was to be repaid the money invested in her property business when the real estate was sold. As for the $50,000 used for stock purchases, she said “he did not want to share the risk, so instead of calling it an investment at that point in time, he wanted the [monies] repaid to him.” The | ¿money for the stock purchases was distributed through an investment account owned by Alexander in which he directed the deposit of $50,000 into a Palazcoe account for Pa-lazzo’s use.
 

 As to her understanding of the nature of the money provided by Alexander, Palazzo explained “well, if one doesn’t take the risk, it’s not an investment. I mean part of the problem is I think he wanted his cake and eat it, too. I mean if we made— if I made a profit on it he wanted to share in the profits, but he didn’t want to share in the risks. I mean that’s — it’s an animal that doesn’t exist. At least not that I’ve learned about.”
 

 Alexander likewise testified that he had discussed getting involved in some real estate investments with Palazzo and so he provided $140,000 to invest in real estate Palazzo owned. As for the $50,000 disbursement, Alexander acknowledged that he invested the money with the intent that his financial liability would be limited to the $50,000 invested. Alexander testified that when he provided the funds, “[w]e had no specific terms as to how the final would be distributed or paid off or what have you. At the time, we were married, so we were — I was investing my money and— with her. And so there was no specific terms as to how the — in the final analysis how it would be paid.” Alexander first made a demand for the amounts paid in April 2003, after the parties separated.
 

 In 2003, Alexander and Palazzo separated, and pursuant thereto, Palazzo typed up an agreement dated June 12, 2003, that was signed by both parties. In the agreement, the following statement is recited “Dr. Alexander is to be paid for the monies owed to him — specific amount to be determined, but in rounded figures about $130,000. (Confirmed by his accountant) minus the cost of the safe.” At trial, Pa-lazzo acknowledged typing and signing the agreement, stating “I can tell you why that document was typed up. It was typed up to get him off my back. And I wanted to have some stipulations in there about the things that were at his house that were mine, and most importantly, that document was typed up so I had [^access to Baby Princess Girl, our black lab.” The actual agreement was placed in evidence along with documents from Alexander’s account
 
 *953
 
 ant documenting the amount owed of $190,000. Based on this evidence, we find no error in the trial court’s determination that the transactions at issue constituted a contractual or personal obligation and were not simply money lent.
 

 Palazzo’s signing of the June 12, 2003 agreement agreeing to pay the sums owed to Alexander created a binding obligation that was legally enforceable as a personal action, even for those sums ostensibly given to Palazcoe.
 
 See
 
 La. C.C. arts. 1823, 1855, and 1906. We accordingly find no merit in Palazzo’s assignment of error contending that the trial court erred in failing to find Alexander’s action to recover the money prescribed. The June 12, 2003 agreement created an obligation and Alexander’s suit was filed on November 21, 2005, with respect to that obligation. Furthermore, as a personal or contractual obligation, the June 12, 2003 agreement was subject to the ten-year prescriptive period found in La. C.C. art. 3499.
 

 Finally, considering the conclusion reached herein that Alexander’s suit for recovery of the $190,000 can be premised on the fact that Palazzo signed the June 12, 2003 document, there is insufficient evidence in the record before us to determine where the parties signed the document to determine if venue in Terre-bonne Parish was proper.
 
 See
 
 La. C.C.P. arts. 42(1), 45(3) and 76.1. Further, we find that Palazzo waived her objection to venue in Terrebonne Parish when she failed to seek supervisory' review of the trial court’s ruling pursuant to La. C.C.P. art. 2201.
 
 [1]
 

 See M & L Industries, L.L.C. v. Hailey,
 
 05-940, p. 12 (La.App. 3d Cir.3/1/06), 923 So.2d 869, 877.
 

 | fiWhile it is true that normally when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to her, in addition to the review of the final judgment,
 
 see Judson v. Davis,
 
 04-1699, p. 8 (La.App. 1st Cir.6/29/05), 916 So.2d 1106, 1112-1113,
 
 writ denied,
 
 05-1998 (La.2/10/06), 924 So.2d 167, such review would be meaningless in this instance because we have no practical means of correcting the alleged erroneous denial of the declinatory exception raising the objection of improper venue on appeal after final judgment is rendered, if such was established.
 
 Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc.,
 
 396 So.2d 878 n. 1 (La.1981). Further, as discussed in
 
 M & L Industries, L.L.C.
 
 (quoting
 
 Danny Weaver Logging, Inc. v. Norwel Equipment Company,
 
 33,793 (La.App.2d Cir.8/23/00), 766 So.2d 701): “Any disadvantage that an incorrect ruling on venue may pose to the defendant does not impact the merits of the case, and therefore does not outweigh the costs of the subsequent employment of the resources of the judicial process in that venue.”
 
 M & L Industries, L.L.C,
 
 05-940 at 11, 923 So.2d at 876. Thus, we reject Palazzo’s assignment of error pertaining to the trial court’s overruling of the declinatory exception objecting to venue as we find that she waived the objection by failing to seek supervisory review of the trial court’s ruling.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court is affirmed. All costs of
 
 *954
 
 this appeal are cast to the appellant, Maria Carmen Palazzo.
 

 AFFIRMED.
 

 KUHN, J., concurs.
 

 [1]
 

 . As a result of the 2005 amendment of La. C.C.P. art.2083, effective January 1, 2006, to provide that "[a]n interlocutory judgment is appealable only when expressly provided by law[,]” the denial of a declinatory exception raising the objection of improper venue is no longer an appealable interlocutory judgment on the grounds that the judgment could cause irreparable harm.
 
 West Cameron Port, Harbor and Terminal District v. Lake Charles Harbor and Terminal District,
 
 06-496 (La.App.3d 5/31/06), 931 So.2d 1232.